contained in this affidavit from which the court can judge of the materiality of this evidence.

The affiant further states that he is informed by counsel that Herbert Kinney is at the head of the real-estate department of the New York Central Railroad Company, and has in his possession and control all original deeds of Rockland county real estate purchased by the West Shore Railroad Company, and that it is desired to have these produced by a subpœna duces tecum; and that Mr. Rickard is the treasurer of the New York, Ontario & Western Railroad Company, and that all original vouchers are in the official possession of said treasurer, including vouchers for money paid to said special guardian, and that it is desired to have these vouchers produced by a subpœna duces tecum. As far as the deeds are concerned, they are undoubtedly recorded in Rockland county, and these records are evidence. There is no contention that the consideration mentioned in these deeds is greater than that which the special guardian received; and the claim that it can be established by these witnesses that these moneys were not paid to the special guardian is not shown to have any foundation in fact, as it does not appear that the affiant has ever had any conversation with these witnesses, or that he has any information upon the subject.

Under these circumstances, all the proceedings in reference to the sale of these infants' real estate having taken place in Rockland county, it seems to us that there was the proper place for the trial of this action; the only witnesses which, upon these papers, are shown to be material, being residents of that county.

We are of opinion that the order should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs, to abide the event. All concur.

---

(27 Misc. Rep. 181.)

### KIRWIN v. BARNEY.

(City Court of New York, General Term. April 3, 1899.)

1. REAL-ESTATE BROKERS—RIGHT TO COMMISSIONS.

In an action to recover commissions for procuring a purchaser for real estate, plaintiff must show that the proposed purchaser was able, ready, and willing to purchase on the terms named by the vendor.

2. CLUBS—POWERS OF TRUSTEES—ACQUISITION OF REAL ESTATE.

Provisions in the constitution of an incorporated club authorizing its board of trustees "to have the control and management of its property, funds, and affairs," and "determine all matters affecting the welfare of the club," and to "authorize and control all expenditures," do not confer authority on such board to acquire real estate for club premises, or to authorize a committee to do so.

Appeal from trial term.

Action by John P. Kirwin against Charles T. Barney. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before FITZSIMONS, C. J., and HASCALL, J.

John V. Bouvier, for appellant.

Deyo, Duer & Bauerdorf, for respondent.

FITZSIMONS, C. J.   This is an action brought by plaintiff, who is a real-estate broker, to recover commissions for the alleged procurement of a purchaser for certain real estate owned by defendant in this city, at the request of defendant.   Under the issues framed by the pleadings, the duty rested upon the plaintiff to establish that the proposed purchaser was able, ready, and willing to purchase the property upon the terms named by the vendor.   Gilder v. Davis, 137 N. Y. 504, 33 N. E. 599.   In this instance the proposed purchaser was the West End Club, a duly-incorporated body.   The plaintiff claims that it acted in this matter through a duly-appointed committee, one Mr. Marx Arnheim being the chairman thereof, and that he offered to sign the contract of sale as such chairman, but defendant refused to so accept his signature, insisting that Mr. Arnheim should sign as an individual, thus assuming individually, and not as the representative of the club, the obligation of performing the conditions of the contract.   Assuming this to be true, the inquiry is presented, was Mr. Arnheim the duly-appointed agent of the club to purchase said premises?   No doubt defendant had the right to insist that the proposed signer should be a responsible and duly-accredited agent of the club.   It was the duty of plaintiff to show that he was selected and appointed in the manner prescribed by law, and by the constitution and by-laws of said club.   This he endeavored to do by showing that at an alleged meeting of the club held on May 15, 1895, the following resolution was adopted:

. "That this club purchase the premises for its club building on the N. W. corner of Central Park West and 75th Str. at the price of $105,000.00; and the president of the club is hereby directed to negotiate for such purchase, and enter into a contract therefor on such terms as he shall consider wise, and for the best interest of the club, and employ counsel for the examination of the title thereto, and thereafter shall receive in his own name as president, as aforesaid, a warranty deed, with full covenants conveying to him the said premises as such president, and to his successors.   Carried."

This was adopted at a "special meeting" of the club, called for the purpose of receiving the report of the site committee concerning such purchase.   Yet it does not appear that the members had notice of such special meeting, nor does it appear that enough members were present to constitute a quorum at such a meeting; simply the declaration of the secretary that, members responding, therefore a quorum was declared to be present.   In our judgment, this testimony failed to show that the meeting referred to was a duly-organized meeting, and that its proceeding was binding upon the club.   In our judgment, said meeting, judging from the testimony submitted, was a nullity; but conceding, for argument's sake, that the resolution was duly and regularly adopted, yet the testimony shows that it was never acted upon.   As directed by said resolution, the president (Mr. Isaac Frank) never offered to sign the contract of sale, nor was any attempt apparently made by him, or any other person in his behalf, to act under the resolution referred to.   It was ignored.   The resolution under which Mr. Arnheim and his brother committeemen acted was one adopted at a meeting of the board of trustees held May 26, 1895, reading as follows: "That the chairman of the site committee be authorized to buy the lots at $105,000, with the understanding

that he obtains a second mortgage of at least $25,000 on the original proposition." Under and by virtue of the resolution, Mr. Arnheim, as chairman of the site committee, offered to sign the contract of sale. Mr. Frank never pretended or offered to act under the resolution passed by the club. Thus is presented the question, by what authority was the club's resolution set aside, and that of the trustees acted upon? Apparently this course of procedure was adopted by the trustees upon the assumption that they had the power to do so under the following provisions of the constitution:

### Article 1.

Sec. 4. It shall have a board of trustees, consisting of eleven members, including the officers. The board of trustees shall have the control and management of its property, funds, and affairs pursuant to law and in accordance with its constitution and by-laws.

### Article 6.
### Powers of the Board of Trustees.

Section 1. The board of trustees shall have cognizance of and determine all matters affecting the welfare of the club, authorize and control all expenditures; and all questions and differences which affect the internal interests of the club shall be determined by them. It shall adopt a corporate seal, and may alter the same at its discretion.

According to my understanding of the provision just quoted, the doings of the trustees at said meeting were unauthorized by the constitution, and were a usurpation of authority. They simply had the right to control and manage the property of the club, its funds and affairs. These provisions surely conferred upon them no authority to acquire real estate for the club, and charge the purchase thereof against it, or to authorize a committee to do so. Thus it appears to us that the plaintiff has failed to show that he had produced a purchaser against whom the defendant could successfully prosecute an action for specific performance, because, as above argued, the person he did produce (Mr. Arnheim) was not a duly-accredited agent of the club and one whose acts would bind it. Besides, the testimony fails to show affirmatively that the club was financially able to carry out the terms of the intended contract, which required the payment of $7,500 at the signing of the contract and $7,500 additional upon delivery of the deed. We think that plaintiff failed to prove that Mr. Arnheim had authority to act. Also that he failed to prove that the West End Club was financially able to comply with the terms of the proposed contract, and for these reasons he has failed to establish a cause of action against defendant, and the motion made to dismiss the complaint should have been granted. However, these omissions may be supplied upon a new trial.

Upon the whole evidence, we think that plaintiff did not prove a cause of action. The judgment must be reversed, and a new trial ordered with costs to the appellant to abide event of action.

HASCALL, J., concurs.