BERNARD F. GARVEY, Respondent, *v.* THE LONG ISLAND RAILROAD COMPANY, Appellant.

1. RAILROADS — LEGISLATIVE SANCTION DOES NOT EXTEND TO SUCH USE OF A TURNTABLE AS TO SERIOUSLY INJURE ADJOINING PREMISES. The general statutory power to construct and operate a steam surface railroad does not authorize such an unreasonable construction and use of a turntable in a terminal yard, in the vicinity of an inhabited dwelling on adjoining private property, as to seriously, continuously and permanently injure the adjoining premises and impair their enjoyment, without compensation; and if a turntable is so used as to have that effect, such use constitutes a nuisance which may be enjoined.

2. DUTY OF RAILROAD TOWARDS PRIVATE PROPERTY AFFECTED BY APPLIANCES IN TERMINAL YARD.    If the convenience of a railroad company requires a change in its terminal yard, so that what has been done in one part thereof with one kind of appliances without injury to private property, when done in another part with another kind inflicts serious injury upon the buildings on adjoining land, it becomes its duty to acquire the right to thus virtually use the neighboring property, either by purchase or through the power of eminent domain.

3. EQUITY — INJUNCTION OF CONTINUING TRESPASS ALTHOUGH AMOUNT OF DAMAGES NOT FIXED.    Where strong and aggravated instances of continuing trespass are shown, which must necessarily result in substantial damages to the plaintiff's property that are in no way offset by benefits, a permanent injunction may be issued, although the amount of the damages is not fixed.

*Garvey* v. *L. I. R. R. Co.*, 9 App. Div. 254, affirmed.

(Argued April 28, 1899; decided June 6, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 23, 1896, affirming a judgment entered upon the decision of the court after a trial at Special Term.

This action was brought to recover the damages alleged to have been sustained by the plaintiff, as the owner of a dwelling house known as No. 28 Hanson place, in the city of Brooklyn, on account of a continuous nuisance committed by the defendant, a railroad corporation, upon its own premises directly at the rear of the plaintiff's, and to restrain the further commission thereof. The nuisance was described in the complaint as follows: " Locomotives enter, move about in, and leave the yard to the number, during the summer, of about 200 daily, each making its characteristic noises, such as the hissing and pounding of escaping steam, the rumble of wheels, the clatter of irons, the clanging of bells and other irritating noises. Each locomotive which enters the yard is run upon a turntable constructed in the immediate rear of plaintiff's house, making a noise as it goes on like an explosion, and shaking and jarring the plaintiff's house. Steam, smoke, cinders, ashes and noxious and unwholesome gases are set free in the defendant's yard, and cast upon the plaintiff's premises and into the plaintiff's doors and windows."

The defendant, after admitting some portions of the complaint and denying others, alleged that it was a domestic railroad corporation, and that the acts complained of were done by it " lawfully, carefully, and for the purposes of its incorporation only."

The justice before whom the case was tried did not fully state the facts found by him, but decided " that the operation by the defendant of its turntable upon its premises mentioned in the complaint, together with the general conduct of its business upon said premises, amounts to a nuisance to the plaintiff's premises mentioned in the complaint." No damages were found, but the defendant was enjoined " from the operation of such turntable and from the conduct of its business generally upon said premises in such manner as to amount to

a nuisance." The operation of the injunction was suspended for about three months " in order to give the defendant an opportunity to condemn the plaintiff's property, or such easement therein as it may be advised."

On the trial it appeared that in May, 1891, the plaintiff moved into his house, No. 28 Hanson place, to reside with his family. In the spring of 1892, the defendant, in rearranging its railroad yard, built a turntable directly in the rear of plaintiff's premises, and erected a water tower there. Prior to this both the turntable and the water tower were from 150 to 200 feet farther off. The turntable, a new variety, is a large, horizontal structure of iron, sixty feet long, swinging on a pivot in the center, and when at rest either end is suspended half an inch above a circular track. When an engine is run upon it, one end goes down with a ponderous blow, causing a loud noise and a heavy jar. The engines used by defendant weigh from 90,000 to 185,000 pounds each, and they are run upon the table every day to the number of at least seventy in the summer and thirty in the winter, at various hours, sometimes late at night. The ashes are dumped from the engine and water is taken by it on the same occasion that it is turned around by the table. This process occupies from five to twenty minutes and while it is going on steam is generally escaping from the safety valve with a loud noise, and smoke and gases, sometimes from soft coal, issue from the smokestack, and when the wind is south, penetrate the plaintiff's house. The result of the new arrangement was to centralize all these evils in the immediate vicinity of plaintiff's premises. There was evidence tending to show that the effect of the blow caused by a locomotive when it ran upon the turntable and the end fell, was to shake the plaintiff's house from top to bottom, crack the walls, move the bed springs so as to awaken a person lying in bed by moving it up and down, jar articles on the tables, move the pictures, cause the chandeliers and the windows to shake and the like. The noise was described by some witnesses as deep, something like thunder, but not so loud. Others described the vibrations by compar-

ing them with those caused by an earthquake, and one said
the noise was like an explosion of gunpowder. Still another
said : " It seems like a heavy vibration of the earth and moves
the house. The vibration lasts sometimes longer than others.
When it (the locomotive) goes on, it goes on sharp and gives
a heavy jar. * * * 1 know I feel it when I am lying in
bed at night, mostly between ten and eleven o'clock; there is
a train goes out or comes in at that time, and this sudden jar
will awaken and annoy me. Accompanying that jar is the
noise I have described." In the summer time the windows
could not be kept open owing to ashes, cinders and smoke
from the engines. The cinders spotted the clothes hung out
to dry so that they had to be re-washed, and fine ashes sifted
through the windows, even when they were down, and settled
on the furniture. One witness stated that the noise would
awaken any one from a sound sleep and that the vibrations
had cracked the walls of her house, while another, who lived
next to the plaintiff, said that the ceilings in every room in
her house had cracked since the new turntable was put in.
None of these difficulties were observed prior to the rearrange-
ment of the yard and the concentration of all the agencies men-
tioned directly at the rear of plaintiff's house, although most
of the witnesses had occupied their respective houses for
years. One of the near neighbors, whose house was situ-
ated more favorably than the plaintiff's, stated that she could
not let the rooms in the back part of her house, because
the occupants all left, stating that they could not sleep on
account of the noise. Another, who lived one door from the
plaintiff, testified that her inside blinds on the top floor set-
tled so that they could not be closed, and that the doors also
settled in the front area. The witnesses for the defendant
minimized these results, but did not deny their existence
altogether. They stated that the appliances were of the best
kind and were used in the most careful manner, but one wit-
ness admitted that the foundation of the turntable was not
solid at first. At the close of the evidence both parties stipu-
lated in open court that the trial justice should visit the locality

and inform himself by practical experience as to the alleged annoyances, and the record shows that he did so before making his decision.

The Appellate Division affirmed the judgment rendered by the trial court and the defendant appealed.

*Alfred A. Gardner* for appellant. The judgment is fatally inconsistent in that it awards no damages, but, nevertheless, grants an injunction. (*Smith* v. *I., etc., Co.,* 12 Misc. Rep. 5; 155 N. Y. 677; *Porter* v. *S. & B. B. Co.,* 91 Hun, 202; *Otten* v. *M. Ry. Co.,* 2 App. Div. 398; *Sutro* v. *M. Ry. Co.,* 137 N. Y. 592; *Gray* v. *M. Ry. Co.,* 128 N. Y. 509; *Purdy* v. *M. E. Ry. Co.,* 36 N. Y. S. R. 43; *Brush* v. *M. Ry. Co.,* 44 N. Y. S. R. 116; *O'Reilly* v. *N. Y. E. R. R. Co.,* 148 N. Y. 347; *Wormser* v. *Brown,* 149 N. Y. 171.) The judgment is fatally inconsistent in that it declares the yard to be a nuisance, but, nevertheless, directs the defendant within three months to condemn the right to continue the nuisance. (*Adler* v. *M. E. Ry. Co.,* 138 N. Y. 179; *Hine* v. *N. Y. E. R. R. Co.,* 128 N. Y. 571.) As no property right was invaded, the judgment cannot be sustained upon the theory of a continuing trespass. (*B. W. Co.* v. *B. & W. R. R. Co.,* 16 Pick. 522; *A. B. N. Co.* v. *N. Y. E. R. R. Co.,* 129 N. Y. 271; *Story* v. *N. Y. E. R. R. Co.,* 90 N. Y. 122; *Lahr* v. *M. E. Ry. Co.,* 104 N. Y. 268; *Abendroth* v. *M. Ry. Co.,* 122 N. Y. 1; *Kane* v. *N. Y. E. R. R. Co.,* 125 N. Y. 164; Demarest on E. R. R. Law, ch. 2, pp. 44, 45; Randolph on Em. Dom. § 404; *Powers* v. *M. Ry. Co.,* 120 N. Y. 178; *Flinn* v. *N. Y. C. & H. R. R. R. Co.,* 142 N. Y. 11.) There is no question of improper location in this case. (*Cogswell* v. *N. Y., N. H. & H. R. R. Co.,* 103 N. Y. 10; *Bohan* v. *P. J. G. L. Co.,* 122 N. Y. 18; *B. & P. R. R. Co.* v. *F. B. Church,* 108 U. S. 317; *Morton* v. *Mayor, etc.,* 140 N. Y. 207; *Booth* v. *R., W. & O. R. R. Co.,* 140 N. Y. 267; *Hill* v. *Mayor, etc.,* 139 N. Y. 495.)

*George S. Billings* for respondent. There is no law permitting the defendant to do the specific acts complained of,

and its general authority to do a railroad business does not exempt it from the control of the courts to the extent of preventing it from so conducting its business as to invade, without condemnation, the rights of adjoining owners. (*Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10; *Hill* v. *Mayor, etc.*, 139 N. Y. 495; *Morton* v. *Mayor, etc.*, 140 N. Y. 207; *Booth* v. *R., W. & O. R. R. Co.*, 140 N. Y. 267.)

VANN, J. From the evidence appearing in the record. especially when it is amplified by the view of the premises taken by the trial judge at the request of both parties, and from the nature of the findings, which have the effect of a general verdict for the plaintiff, we are compelled to assume, after affirmance by the Appellate Division, the existence of a nuisance upon the defendant's premises that seriously injures the premises of the plaintiff. (*Amherst College* v. *Ritch*, 151 N. Y. 282, 320.)

It is claimed that the judgment below cannot be sustained because no property right of the plaintiff was invaded, inasmuch as the defendant had authority for what it did in the statute which created it. That statute conferred no unusual power upon the defendant, but simply authorized it to construct and operate a steam surface railroad. It did not authorize it to construct this particular turntable, or to maintain this particular yard, or to concentrate the particular evils of its terminal station in the immediate vicinity of inhabited dwellings. The implied powers springing from the express power to maintain a railroad, do not extend to the grievances complained of by the plaintiff nor permit the ruin of his property without compensation. While the welfare of the public and the necessities of travel require that the plaintiff should submit to annoyances caused by a reasonable use of the property of the defendant, he is not obliged to submit to those caused by an unreasonable use, all the circumstances being taken into account. Slight injuries and annoyances to people living along the line of a railroad are a necessary incident to its maintenance and operation, but when the company

does, even upon its own land, such acts as seriously impair the enjoyment of the adjoining land, to a certain extent it takes such land and must discontinue the practice or make compensation. (*Pumpelly* v. *Green Bay Co.*, 80 U. S. 166.) "The legislature may authorize small nuisances without compensation, but not great ones." (*Bacon* v. *Boston*, 154 Mass. 100.) As the legislature cannot authorize the total destruction of private property without making compensation, so it cannot authorize permanent and substantial injury to such property without making compensation, and it did not assume to do so in the statute upon which the defendant relies. If the convenience of the defendant required a change in its terminal yard, so that what had been done in one part thereof with one kind of appliances without injury to private property, when done in another part with another kind, inflicted serious injury upon the buildings on adjoining land, it became its duty to acquire the right to thus virtually use the neighboring property, either by purchase or through the power of eminent domain. It could not so conduct its business as to crack the walls and ceilings of adjoining houses, awaken people from their sleep by shaking their beds, smoke them out of their rooms, or injure their personal property kept on the premises by casting dust, ashes and cinders upon them, and appeal to the statute for protection. "Where the legislature authorizes a thing to be done which can fairly be accomplished without causing a nuisance, it will be assumed that the legislature intends that it shall be done in that way." (Randolph Em. Dom. § 140.) The statute does not authorize acts that amount to a partial appropriation of property without requiring payment. The injuries complained of are not the natural or unavoidable result of the exercise of the statutory authority, and are outside of the line of legislative protection. Thus, an engine house, although a necessary incident to the operation of a railroad, when so used as to cause smoke, soot, cinders and coal dust to necessarily damage a dwelling house erected upon an adjoining lot, was held a nuisance, and not within legislative sanction, and an action to recover damages and restrain

the nuisance was upheld. (*Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10.) It was further held in that case that where the terms of a statute giving authority to the corporation are not imperative but permissive, it does not confer license to commit a nuisance, although what is contemplated by the statute cannot be done without it.

So when general authority had been conferred upon a municipal corporation to build a pumping station as a part of an extensive system to supply a city with water, but leaving the site to the selection of the corporation, it was held not to confer power, either express or implied, to construct it so near the lands of another as to seriously affect the houses, subsequently built thereon, through the vibrations and noise of machinery. (*Morton* v. *Mayor, etc.*, 140 N. Y. 207.) In that case the court said : " The legislature undoubtedly authorized the defendant to construct a building, and to place in it the necessary machinery to accomplish the purpose in view. But that is not the act complained of, or which produced the injury to the plaintiff's property. The wrong consisted in placing the building and machinery so near to the adjoining property as to injuriously affect it by the noise and vibration. The city has a right to build upon its own land, but there was nothing in the statute that required it to place the structure where it did. It could perform every duty imposed by the statute by building the pumping station at such distance from the adjoining houses as to avoid the results of which the plaintiff justly complains. If it was not possible or practicable to do that upon the land that the defendant owned, then more could have been acquired for the purpose."

The use by the defendant of its property to the injury of the plaintiff was not temporary, for the purpose of adapting it to its business, but regular, continuous, and in the nature of a partial but permanent appropriation. The distinction between a permanent invasion of land and a temporary annoyance, as by blasting, was carefully pointed out in *Booth* v. *R., W. & O. T. R. R. Co.* (140 N. Y. 267, 279).

When the odor from gas works was found to so pollute the

air as to substantially render the plaintiff's property unfit for comfortable enjoyment, it was held to be a nuisance, although the acts complained of were inseparably connected with the carrying on of the business itself, and that it was not essential to a right of action that the owner should be driven from his dwelling. (*Bohan* v. *Port Jervis Gas Light Co.*, 122 N. Y. 18.)

In *Baltimore & Potomac R. R. Co.* v. *Fifth Baptist Church* (108 U. S. 317, 328) the court said: "Plainly the engine house and repair shop, as they were used by the railroad company, were a nuisance in every sense of the term. * * * That is a nuisance which annoys and disturbs one in the possession of his property, rendering its ordinary use or occupation physically uncomfortable to him. For such annoyance and discomfort the courts of law will afford redress by giving damages against the wrongdoer, and when the cause of the annoyance and discomfort are continuous, courts of equity will interfere and restrain the nuisance. * * * It is no answer to the action of the plaintiff that the railroad company was authorized by act of Congress to bring its track within the limits of the city of Washington, and to construct such works as were necessary and expedient for the completion and maintenance of its road, and that the engine house and repair shop in question were thus necessary and expedient; that they are skillfully constructed; that the chimneys of the engine house are higher than required by the building regulations of the city, and that as little smoke and noise are caused as the nature of the business in them will permit. * * * The authority of the company to construct such works as it might deem necessary and expedient for the completion and maintenance of its road did not authorize it to place them wherever it might think proper in the city, without reference to the property and rights of others. As well might it be contended that the act permitted it to place them immediately in front of the president's house or of the Capitol, or in the most densely populated locality. * * * Whatever the extent of the authority conferred, it was accompanied with

this implied qualification, that the works should not be so placed as by their use to unreasonably interfere with and disturb the peaceful and comfortable enjoyment of others in their property."

We close the discussion of the point under consideration by repeating the language of Judge FINCH in *Hill* v. *Mayor, etc.* (139 N. Y. 495, 505): " Obviously, the general doctrine which levies upon individuals forced contributions for the benefit. of the public, and denies compensation for the injury done, is vulnerable at two points. It is defeated sometimes by construing the harm inflicted into a taking of private property for which compensation must be made, and sometimes by a rigid construction of the authority claimed. Both methods indicate a lurking doubt of the equity of the general doctrine and a disposition to narrow the field of its operation."

The defendant insists that its appeal should be sustained because the trial court awarded no past damages to the plaintiff.

A court of equity has jurisdiction of an action to restrain the commission of a continuing trespass, because the injunction prevents a multiplicity of actions at law, which is a grievance to the parties and a burden upon the public. (*Corning* v. *Troy Iron & Nail Factory*, 40 N. Y. 191; *Williams* v. *N. Y. C. R. R. Co.*, 16 N. Y. 97, 111; *Henderson* v. *N. Y. C. R. R. Co.*, 78 N. Y. 423.)

While in such an action the court may also render judgment for the damages already sustained, that relief is merely incidental and is not an essential part of the main cause of action for a permanent injunction. The party entitled to damages may waive them if he chooses, by not furnishing evidence to enable the court to measure them in money, which is an advantage to the defendant, but does not defeat the action. If such substantial and continuous interference with the ordinary enjoyment of property is shown as would. when properly measured by evidence. enable the court to fix the amount of the damages, the injunction may be issued, although no damages are awarded. The extent of the injury is important,

but whether the amount is admeasured in dollars and cents is unimportant, unless there are benefits to be offset against the damages.

When, as in certain actions against elevated railroads, a wrongful appropriation of easements appurtenant to abutting property appears, but it also appears that the presence of the road has so increased the value of the property that the actual damages are only nominal, relief by way of injunction may be refused because the trespass is but technical and the real injury unsubstantial. (*O'Reilly* v. *N. Y. Elevated R. R. Co.*, 148 N. Y. 347.) This is upon the ground that a court of equity " is not bound to issue an injunction when it will produce great public or private mischief merely for the purpose of protecting a technical or unsubstantial right." (*Gray* v. *Manhattan Ry. Co.*, 128 N. Y. 499, 509.)

This is not such a case, but one where the trespass was permanent, continuing and grievous, and went to destroy the value of the property of the owner with no compensating advantages. The decision of the trial justice established the plaintiff's right, the existence of the nuisance and its injurious effect upon his property. The case was thus brought within the sound discretion of the court, and after united action by the courts below, we cannot interfere. The theory is not tolerable that, although one party to an action may be gradually demolishing the house of the other, the latter cannot have an injunction to prevent its total destruction, because the amount of the damages already sustained has not been admeasured in money.

Our conclusion is that where strong and aggravated instances of continuing trespass are shown, which must necessarily result in substantial damages to the plaintiff's property that are in no way offset by benefits, a permanent injunction may be issued, although the amount of the damages is not fixed.

The judgment should be affirmed, with costs.

All concur, except PARKER, Ch. J., and HAIGHT, J., not voting.

Judgment affirmed.