HANNAH BENNETT, Appellant, *v.* THE LONG ISLAND RAILROAD COMPANY, Respondent.

RAILROADS — WHEN NOT LIABLE TO ABUTTING OWNER FOR INJURIES INCURRED BY CONSTRUCTION OF VIADUCT. Where a steam surface railroad company has been granted a right of way in fee, it is not liable to the owner of property abutting on a street in front of the railroad, who subsequently acquired title to his premises through mesne conveyances from the same grantor, for the increased damages to his easements caused by the construction thereafter of a viaduct, upon which it operated its trains for the purpose of connecting with an elevated road; since such structure and use not being inconsistent with the object of incorporation

is legal, and if properly exercised the injuries resulting therefrom are *damnum absque injuria.*

Bennett v. *Long Island Railroad Co.,* 89 App. Div. 379, affirmed.

(Argued April 20, 1905; decided May 30, 1905.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 16, 1904, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and directing a dismissal of the complaint.

The defendant operates a steam surface railroad, partly in the borough of Brooklyn, city of New York, and the plaintiff is the owner of a lot located on the south side of Atlantic avenue in that borough, on which she has built a two-story frame house, the lower part of which is occupied as a store. She commenced this action to restrain the defendant from maintaining an elevated railroad structure in front of her premises and to recover damages for an alleged invasion of her easements as an abutting owner of land on a public street. The structure complained of is wholly upon land owned by the defendant in fee, except where it crosses Atlantic avenue at some distance west of the plaintiff's premises.

The land thus owned and occupied by the defendant was formerly part of a farm situated in the town of Flatbush, Kings county (now within the limits of the borough of Brooklyn), then belonging to one Johannes Eldert, who is the common grantor of both plaintiff and defendant. In December, 1834, Eldert conveyed to the Brooklyn and Jamaica R. R. Co. a strip of land 49½ feet in width. This conveyance contained various covenants and stipulations. The strip conveyed was to be used and occupied for a steam surface railroad; the grantors and their heirs and assigns were to maintain a four-rail fence or its equivalent along each side of the railroad location; and the grantors, their heirs and assigns were to have the perpetual right of crossing and recrossing the granted premises "in the same manner as if the same were a road or highway." By virtue of certain foreclosure pro-

ceedings and a lease, the defendant, the Long Island Railroad Co., has succeeded to all the rights of the Brooklyn & Jamaica R. R. Co. in and to this strip of land. After the conveyance from Eldert to the Brooklyn & Jamaica R. R. Co., and probably about 1869 or 1870, Atlantic avenue was laid out on each side of this railroad strip, with fences separating it from the avenue and with crossings at intersecting streets. As thus laid out Atlantic avenue has been opened and used as a public street. In 1891, through mesne conveyances from the said Eldert, the plaintiff became the owner of the premises in question, which are on the south side of Atlantic avenue, the front of her building being 38 feet and 11 inches from the strip of land owned by the defendant. In 1898 the defendant built the structure complained of. It is a viaduct beginning at a point about 278 feet easterly of the plaintiff's premises, and runs on an incline along the defendant's strip, and wholly within the boundaries thereof, until it reaches a point about 300 feet westerly of the plaintiff's property, where it turns northerly and crosses Atlantic avenue. For a distance of about 240 feet it is constructed of stone, and the rest is of steel or iron with heavy boxed girders supported by columns of the same material. In front of plaintiff's premises the viaduct is of the latter type of construction, nine feet in height opposite plaintiff's easterly line, and ten feet high opposite her westerly line. The purpose of its construction was to enable the defendant's trains to connect with trains of the elevated railroad system of the borough of Brooklyn.

The learned trial court found that " the streets intersecting and crossing Atlantic avenue are still maintained open, the said elevated structure not being built across them;   *   *   * that the going up of the cars on this incline and turning the curve is at times accompanied with unusual and disturbing noises, and that the structure intercepts the view from plaintiff's premises to the opposite side of the street, and prevents people from seeing the lower portion of plaintiff's building, being that portion that is designed for and occupied as a store.   *   *   *   That the running of defendant's cars over

28

such elevated structure is accompanied by unusual noise, smoke and casting of soot and cinders over and beyond that theretofore caused by operating the surface road, and that by reason thereof, together with the interference with the light and air and view of plaintiff's premises by reason of such elevated structure, the plaintiff has been damaged, and will continue to be so damaged, and the value of her said property materially depreciated. That said elevated structure and the operation thereof constitute and is a nuisance, and the same has already damaged and depreciated the value of the plaintiff's property, and will continue to do so in the future." The court awarded damages to the plaintiff in the sum of $1,200, and granted the usual injunction restraining the operation of the defendant's trains in front of plaintiff's premises unless such damages were paid. Upon appeal the Appellate Division reversed the judgment of the trial court and dismissed the complaint. The plaintiff now appeals to this court.

*Robert Stewart* for appellant. The structure as built and maintained, and the operation of trains over it by defendant, was a nuisance and an injury to plaintiff, causing damages to her for which she is entitled to compensation from the defendant. (*Uline* v. *N. Y. C. R. R. Co.*, 101 N. Y. 98; *Bohan* v. *P. J. Gas Co.*, 122 N. Y. 18; *Garvey* v. *L. I. R. R. Co.*, 159 N. Y. 327; *L. I. R. R. Co.* v. *Garvey*, 159 N. Y. 337; *Matter of Jacobs*, 98 N. Y. 98; *People ex rel.* v. *Otis*, 90 N. Y. 48.)

*Joseph F. Keany* for respondent. No property right of plaintiff was invaded by defendant. (*Conabeer* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 474; *Birrell* v. *N. Y. & H. R. R. Co.*, 41 App. Div. 506; *Beekman* v. *B. & B. B. R. R. Co.*, 89 Hun, 16.)

WERNER, J. Upon facts which are undisputed the trial court decided that the structure complained of, and the operation of trains thereon, constitute a nuisance as to the plaintiff.

The order of the Appellate Division reversing the judgment of the trial court is silent as to the grounds upon which it was made, and we must, therefore, treat it as resting wholly upon questions of law. (Code Civ. Pro. § 1338.)

In its final analysis the controversy resolves itself into the single question whether, assuming all the facts as found, the defendant has the legal right to maintain the structure complained of, and to operate its trains thereon. As bearing upon that question a few facts are of paramount importance. The grant to the Jamaica & Brooklyn R. R. Co., the defendant's predecessor, was made in 1834. It was a grant in fee, and made for the express purpose of enabling that corporation to construct and operate a steam surface railroad. Many years after such a railroad had been constructed and operated upon land thus owned in fee, Atlantic avenue was opened as a public street or highway on both sides of the railroad land. Not until long after Atlantic avenue had been thus opened did the plaintiff acquire title to the premises now owned and occupied by her. At the time of her purchase, the southerly part of Atlantic avenue, about 29 feet wide, lay between her land and that of the railroad company. None of her rights in and to the highway itself have ever been encroached upon or impaired. Upon these facts the plaintiff concedes that the defendant has the right to maintain and operate a steam surface railroad upon its land, but contends that it has no right to impose upon her land the added burden of increased noise, smoke, soot, cinders and interference with her easements of light and view, caused by the construction, maintenance and operation of an elevated structure or viaduct. This contention would be unanswerable if the defendant had undertaken to change its system so as to substitute an elevated railroad for a street surface railroad ; but that is not this case. The viaduct opposite plaintiff's premises was only a few hundred feet long, and was constructed for the sole purpose of connecting defendant's surface railroad with the Long Island system of elevated railroads. Upon just such facts as these it has been held that an elevated viaduct, erected and

operated by a steam surface railroad corporation, for the pur-
pose of connecting its lines with an elevated railroad, is not
inconsistent with the specified objects of its incorporation, and
does not change its general character. (*Beekman* v. *Brooklyn
& B. B. R. R. Co.*, 89 Hun, 14; *Gallagher* v. *Keating*, 27
Misc. Rep. 131; affd., 40 App. Div. 81 and 171 N. Y. 657.)

Counsel for the plaintiff seeks to differentiate these cases
from the one at bar, on the ground that in the former the
municipal authorities had given their consent to the erection
of the elevated structures, while in the latter no such consent
has been shown. The record here is silent upon the subject
of municipal consent. Nothing can be presumed for or against
either party upon that score. The municipal authorities are
not before us complaining of this structure, and the lack of
municipal consent is of no importance in a case like this,
except as its absence may make a nuisance *per se* of that which,
with such consent, may be simply a legalized trespass upon
individual rights. But in either event there must be an inva-
sion of private rights to support an action by an individual
for his own benefit. The learned trial court has found that
the structure complained of and its operation constitute a
nuisance as to the plaintiff. But do the facts warrant this
conclusion? We think not. The learned justice who wrote
for the Appellate Division stated the situation most forcibly
and correctly when he said : " The defendant has done nothing
except to construct and operate its railroad in accordance with
the increasing demands of the time, and whatever injury is
inflicted upon the plaintiff, being incidental to that increase,
must be deemed to be within the terms of the conveyance of
the defendant's property, to which her own conveyance is
subject. Aside from the maintenance of the incline, every
act complained of is a necessary incident to the running of
cars propelled by steam. The rumble of trains, the clanging
of bells, the shriek of whistles, the blowing off of steam, the
discordant squeak of wheels in going around the curves, the
emission of smoke, soot and cinders, all of which accompany
the operation of steam cars, are undoubtedly nuisances to the

neighboring dwellings in the popular sense, but. as they are necessarily incident to the maintenance of the road, they do not constitute nuisances in the legal sense, but are regarded as protected by the legislative authority which created the corporation and legalized its corporate operations. Nor does the legal nature of such annoyances change as traffic increases them in volume and extent."

Since the findings of fact herein embrace nothing that the defendant has not the right to do, if done properly, and there is no finding that anything in the method of operation can be obviated without destroying the right, we concur in the conclusion of the Appellate Dvision that the plaintiff has no cause of action.

A few words will suffice to distinguish this case from two classes of cases referred to upon the argument. The conclusion we have reached is not at war with the decisions in the so-called Fourth avenue cases. (*Lewis* v. *N. Y. & H. R. R. Co.*, 162 N. Y. 202; *Muhlker* v. *Same,* 197 U. S. 544.) In those cases the highway (Fourth avenue) had been laid out, but not actually opened, for many years before the railroad was built. The abutting owners had acquired easements in the highway which antedated the rights of the railroad company, and the latter's interference with such easements was in the nature of an unlawful encroachment or trespass. As to some of the abutting owners the railroad company was held to have acquired certain rights by prescription or adverse possession, and in those cases it has been decided that there is a right of recovery for invasion of easements in excess of the rights thus acquired. In the case at bar it is different. Many years before Atlantic avenue was laid out or opened the defendant's predecessor had obtained an absolute title to its land, under a deed giving it the right to operate a steam surface railroad thereon. When Atlantic avenue was laid out, such a railroad was in actual operation upon the land acquired for that purpose. It was this situation, no doubt, that led to the laying out of a double street, one section on either side of the railroad strip. Subsequent

purchasers of lands abutting upon this highway took their titles from the same source as the defendant and subject to its vested rights. That is the *status* of the plaintiff.

Neither is the case at bar in conflict with the decisions in *Garvey* v. *Long Island R. R. Co.* (159 N. Y. 323); *Cogswell* v. *N. Y., N. H. & H. R. R. Co.* (103 id. 10); *Morton* v. *Mayor, etc., of N. Y.* (140 id. 207); *Booth* v. *Rome, W. & O. T. R. R. Co.* (140 id. 267), and *Bohan* v. *Port Jervis Gas Light Co.* (122 id. 18). In none of those cases had the plaintiffs taken their lands expressly subject to the use which the defendants were making of their lands. In each of those cases the particular thing complained of was held to be unreasonable and unauthorized, and, therefore, an unwarrantable invasion of the rights of the complainants. If the lands used for the turntable in the *Garvey* case, the pumping station in the *Morton* case, or the gas retort in the *Bohan* case, had been acquired for those very purposes, from a grantor who subsequently conveyed adjoining lands to others, the respective situations and decisions would, doubtless, have been materially different. But underlying even these cogent considerations there is the basic distinction that when the legislature authorizes the operation of a steam surface railroad it impliedly sanctions and legalizes those inconveniences and annoyances to others which are inseparable from the proper conduct of such an enterprise.

The order of the Appellate Division should be affirmed, with costs.

CULLEN, Ch. J., GRAY, O'BRIEN and HAIGHT, JJ., concur; BARTLETT and VANN, JJ., dissent.

Order affirmed.