ice Commission to establish the fact that relator sought to use the company's current only during those hours that it would be most expensive to produce it. If that be so, the situation could be readily met by establishing a rate for such service; but it is probably not so, for it surely must be that a very large proportion of the company's customers use electricity only at night and not at all in the daytime, and yet no one would say that it would be reasonable for the company to refuse to furnish current unless the customers would undertake to use it during the whole 24 hours of each day.

[3] It is urged by the company, and apparently agreed by the commission, that the company in any event is not obliged to furnish electricity for power and refrigerating purposes. This contention is based upon the language of section 62 of the Transportation Corporation Law, above cited, which refers only to the furnishing of electricity for lighting purposes. In our opinion, however, the company's duty to furnish service does not rest upon the statute alone, but upon the common-law obligation as a public service corporation which requires it to serve impartially every member of the community. It may be that, if it did not undertake to furnish electricity for power purposes to any one, it could not be coerced to do so. Upon that question we express no opinion. It does, however, profess and undertake to furnish electric current for power purposes, and this it does by virtue of its franchise as a public service company. So professing and undertaking, it cannot arbitrarily pick and choose whom it will serve and whom it will not.

To sum up our conclusion, we are of opinion that the company's reasons for refusing to furnish electrical current to the relator are untenable, and that the restrictive clause which it insists in inserting in its contracts, and to which relator objects, is contrary to public policy and invalid and constitutes in no proper sense a reasonable regulation respecting the use of the service which relator demands.

The writ is therefore sustained, the determination of the Public Service Commission reversed, and the matter referred back to said commission to make such order in the premises as may be proper, with $50 costs and disbursements to the relator to be paid by the defendant the New York Edison Company. All concur.

---

(163 App. Div. 475)

HEARST v. NEW YORK CENT. & H. R. R. CO.   (No. 6017.)

(Supreme Court, Appellate Division, First Department.   July 10, 1914.)

1. RAILROADS (§ 222*)—OPERATION—ENJOINING NUISANCE.
    A property owner, if entitled in any event to injunctive relief against the use of railroad switches and sidings for the purposes of a terminal yard, where the annoyances suffered by him were not special or peculiar to him, but were shared by every one else in the vicinity, was not so entitled unless the railroad company was acting unlawfully, unreasonably, or negligently.

    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec. Dig. § 222.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

2. RAILROADS (§ 222*)—TERMINAL YARDS—LOCATION.

There is no legal delimitation of the property to be used as a terminal yard as distinguished from that part of a railroad company's property used solely for the passage of trains, though in selecting the location for a terminal yard the company acts in its private capacity and cannot shield itself behind its charter as an excuse for unnecessarily impairing private property.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec. Dig. § 222.*]

3. RAILROADS (§ 222*)—OPERATION—ENJOINING NUISANCE.

Where a railroad company's terminal yard, which in no sense constituted a nuisance and the location of which was not improvidently selected, was inadequate for the increasing traffic, and the city authorities have neglected to approve or disapprove plans prepared by the railroad company for changes in its yards and terminal facilities, it was not unlawful for it to use switches and sidings outside of but near to its terminal yard for classifying trains and other terminal yard purposes, though such switches and sidings adjoined a park and were near a high-class residence section of the city, where its terminal operations were not carried on negligently, unreasonably, or with a wanton disregard of the rights of residents in the neighborhood, and hence such use could not be enjoined by an owner and occupant of property in the neighborhood.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec. Dig. § 222.*]

4. RAILROADS (§ 222*)—OPERATION—ENJOINING NUISANCE—SUFFICIENCY OF EVIDENCE.

In an action to enjoin the use of railroad switches and sidings for terminal yard purposes, in which the decree enjoined the company from storing live stock cars on such tracks, evidence *held* insufficient to show that such cars were stored on such tracks.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec. Dig. § 222.*]

5. RAILROADS (§ 222*)—OPERATION—ENJOINING NUISANCE.

A railroad company could not be enjoined, in a suit by a private individual whose property did not adjoin the railroad, from permitting smoke from soft coal to escape from locomotives used in drawing trains, as distinguished from switching locomotives used in yard operations, in the absence of any showing that the locomotives were not operated in a proper and skillful manner, since it, being engaged under legislative authority in the performance of public duties, was exempt as a public servant from liability to private suits so far as concerned incidental damage accruing to the owners of nonadjoining lands through the proper and skillful operation of the railway.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec. Dig. § 222.*]

Hotchkiss and Dowling, JJ., dissenting.

Appeal from Special Term, New York County.

Action by William Randolph Hearst against New York Central & Hudson River Railroad Company. From a judgment for plaintiff (84 Misc. Rep. 606, 147 N. Y. Supp. 869), defendant appeals. Reversed, and complaint dismissed.

See, also, 147 N. Y. Supp. 1116.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Austen G. Fox, of New York City, for appellant.
Clarence J. Shearn, of New York City, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SCOTT, J. By the judgment appealed from the defendant is enjoined from carrying on certain operations incident to the transaction of its business as a railroad company and common carrier.

The plaintiff is the owner and part occupant of a large apartment house situated on the easterly side of Riverside Drive at the corner of Eighty-Sixth street. The defendant is a railway corporation operating a railroad which runs close to the Hudson river approximately parallel with Riverside Drive. That it is duly authorized to operate is not questioned; the plaintiff's complaint being that in so operating it causes annoyance to him and to others residing on or near Riverside Drive. Between plaintiff's property and the defendant's tracks in Riverside Drive is a wide boulevard or parkway, and a public park known as Riverside Park, which lies between the drive and defendant's right of way. The railroad property does not therefore abut upon, nor is it contiguous to, plaintiff's property, of which there is no occupation or appropriation by defendant. The judgment appealed from grants only injunctive relief; no pecuniary damages being awarded. Indeed, it was neither proven nor found that the acts complained of and which are alleged to constitute a nuisance have in any wise affected the value of plaintiff's property in respect of which he sues. That the property has not been depreciated in value or rendered unfit for residence is indicated by the fact that the plaintiff purchased the property after this action had been commenced, and after he had lived in the house, as a tenant, for several years and had been during such residence subjected to the annoyances of which he now complains.

The defendant owns and has used and occupied for a number of years a terminal yard extending along the Hudson river from Sixtieth to Seventy-Second streets. Within recent years its business, consisting upon the lines in question mainly of receiving and shipping freight, has so increased that its said freight or terminal yard has become inadequate for handling the business, and it has been found necessary, to some extent, to use the sidings and switches above Seventy-Second street for the conduct of operations usually confined to a terminal yard such as breaking up and making up trains, and storing freight cars while not in use. It maintains above Seventy-Second street two main lines for running trains, and two sidings or switches upon which are carried on the operations above specified and of which plaintiff complains.

Two facts are very clearly established by the evidence. The first is that it is necessary to use the tracks and sidings above Seventy-Second street for what are termed "yard" purposes, so long as defendant's yard facilities remain inadequate as they are at present. The second is that it is not wholly defendant's fault that its yard facilities have not already been increased and made adequate.

It is true that the court has found that it is not necessary or requisite for the proper maintenance, operation, or use of defendant's railroad that cars should be stored on the sidings between Seventy-Second and Ninety-Sixth streets, or that incoming freight cars should be classified on the tracks between Seventy-Second and Eighty-Sixth streets; but it is also found that:

"The use of defendant's tracks between Seventy-Second and Ninety-Sixth streets as a freight terminal yard for the purpose of switching, classifying, and storing freight cars is caused by congestion of traffic and inadequate facilities in the Sixtieth street terminal yard."

It is also found that the so-called Sixtieth street terminal yard is a badly arranged yard, in which no substantial improvement has been made during the past 25 years, and that defendant through its engineers has planned but not yet put into effect a substantial improvement in said yard, which would at least double its present capacity. It is also found that defendant is now making full use of its facilities to their full capacity for the proper management and operation of its said terminal yard to the fullest extent which the existing area of said yard and terminal and the movement of freight cars and the disposition of freight permits; that the capacity of its yard between Sixtieth and Seventy-Second streets cannot be materially increased without the acquisition of about nine acres of land, title to which is in the city of New York, and about two acres of land, title to which is in private owners; that by an act of the Legislature passed in 1911, and known as chapter 777 of the Laws of that year, the defendant was directed to submit on or before the 1st day of October, 1911, to the board of estimate and apportionment of the city of New York, plans and profiles showing proposed changes in the railroad and railroad structure, yards, stations, and terminal facilities of said railroad owned by it from the northerly boundary of said city extending as far south as Battery Park, a distance which would include the Sixtieth street terminal yard and the tracks above Seventy-Second street; that such plans were prepared by defendant and submitted to said board, as required by said act in September, 1911, and modified plans were, at the request of said board submitted May 12, 1913; but that neither of said plans have been acted upon by the said board, or any officer or agent of said city; and that the defendant is awaiting action thereon.

In considering the judgment appealed from, we must therefore accept as facts established by the findings and supported by the evidence that the annoyances of which plaintiff complains result from using the two sidings or switches north of Seventy-Second street for operations usually conducted in terminal yards; that the use of said sidings or switches for this particular purpose is rendered necessary by the increase of defendant's business, which has outgrown the facilities of its Sixtieth street terminal yard; and that defendant has been prevented from increasing its terminal facilities so as to enable it to handle its traffic without using the switches above Seventy-Second street, by the inaction of the public authorities and their neglect to either approve or disapprove the plans proposed by defendant.

[1] It remains to consider upon these premises whether a sufficient case has been made out for the very sweeping injunction which has been issued. Before proceeding to consider the injunctive clauses of the contract in detail, it may be noted not only, as already said, that no property of the plaintiff is actually appropriated or encroached upon, and that no pecuniary damage to plaintiff or his property is proven or found, but also that such annoyances as plaintiff suffers from the

operation of defendant's road are not special or peculiar to him, but are shared by a great number of other persons; in fact, by all who reside within hearing of the operations complained of. Whether without a finding of special or pecuniary damage plaintiff is entitled to any injunctive relief is a question not wholly free from doubt, but he certainly is not entitled to such relief unless the defendant is acting unlawfully, unreasonably, or negligently in the conduct of its business. There is no finding, as matter of fact, that defendant's operations here complained of are unreasonable or negligent. There are findings that it is not "requisite or necessary" to do some of the things complained of; but, as pointed out above, the obvious meaning of this finding is that it would not be requisite and necessary to do these things if defendant possessed adequate terminal facilities below Seventy-Second street. It is found as matter of law that the use of the sidings for the purposes complained of is "unlawful." Neither the evidence nor the findings of fact, in our opinion, support this conclusion.

[2, 3] There is no legal delimitation of the property to be used as a terminal yard, as distinguished from that part of a railroad company's property used solely for the passage of trains, and, while we recognize the principle that in selecting a location for a terminal yard a company acts in its private capacity and cannot shield itself behind its charter as an excuse for unnecessarily impairing private property (Balt. & Potomac R. R. Co. v. Fifth Baptist Church, 108 U. S. 317, 2 Sup. Ct. 719, 27 L. Ed. 739), yet it is equally clear that the defendant company cannot pursue the business for which it is chartered unless it has a terminal yard somewhere along its line. The defendant has for many years operated a terminal yard between Sixtieth and Seventy-Second streets, and no complaint is made in this case that its site was improvidently selected, or that it in any sense constitutes a nuisance. When that yard became inadequate for the increasing traffic of defendant, it became necessary that a certain part of the operations usually carried on in a yard should be carried on elsewhere until it became possible to increase the facilities of the yard. The natural expedient, and perhaps the only one which was practicable, was to use a part of the sidings and switches nearest the yard, and in our opinion it cannot be said to have been unlawful to do so, provided the operations thus carried on were conducted without negligence or unnecessary annoyance to residents in the neighborhood, and we find no proof or finding that they were not so carried on.

[4] The decree enjoins the defendant: (1) From storing live stock cars on its tracks along the line of the Hudson river between Seventy-Second and Ninety-Sixth streets; (2) from classifying freight cars on said tracks; (3) from maintaining and operating said tracks as a switchyard or as a classification yard or as a storage yard or as a terminal; (4) from making up trains on said tracks; (5) from breaking up trains on said tracks; (6) from permitting its locomotives in passing over said tracks to emit smoke caused by burning soft coal; and (7) from in any manner operating its railroad in front of and in the vicinity of plaintiff's premises in such a manner as to constitute a nuisance. The last provision is altogether too vague and indefinite.

If a defendant is to be bound by a restraining order, and subjected to heavy penalties for violating it, he is entitled to be advised with precision just what acts he is forbidden to do. Such a broad and general provision "is to lay the foundation for inevitable future litigation, in which the issues will be likely to be tried on unsatisfactory ex parte affidavit testimony, in contempt proceedings." Oehler v. Levy, 139 Ill. App. 294; Ballentine v. Webb, 84 Mich. 38, 47 N. W. 485, 13 L. R. A. 321.

So far as concerns the storing of live stock cars, the evidence fails to show that the defendant does store such cars as the word "store" is usually understood. It receives daily a considerable number of cars loaded with live stock and strives to take such precautions as will prevent such cars from standing outside of its Sixtieth street yard for any longer period of time than is necessary. Although certain witnesses testified that they were annoyed from time to time with the odors from these cattle cars, none of them testified that their annoyance was continuous, and the plaintiff testified that he had not experienced any annoyance from the cattle or cattle trains "of late." The principal ground for complaint was noise made in "classifying" trains, meaning the breaking up of trains so as to take different units or sections to different destinations in the yard. There is no evidence or finding that, assuming the right of defendant to use its switches and sidings above Seventy-Second street for the conduct of operations usually carried on in a terminal yard, such operations were carried on negligently or unreasonably.

It was held, in Friedman v. N. Y. & H. R. Co., 89 App. Div. 38, 85 N. Y. Supp. 404, affirmed 180 N. Y. 550, 73 N. E. 1123, that the operation of a railroad yard in an ordinary manner, without negligence, is not a nuisance for which the owner of adjoining premises may recover, although in that case there was proof of actual pecuniary damage and of much more serious inconvenience and annoyance than the plaintiff has proven in the present case. For the reason already stated, we are of the opinion that it was not unlawful under the circumstances for defendant to use its sidings and switches above Seventy-Second street for carrying on certain of the operations usually carried on in a terminal yard, and that as to the particular operations complained of there is no evidence and no finding that they were carried on negligently, unreasonably, or with wanton disregard of the rights of residents in the neighborhood.

[5] This disposes of all the clauses of the judgment except that relating to permitting the issuance from the locomotives of smoke from soft coal. This inhibition can apply only to the locomotives bringing in and taking out solid trains, for it is uncontradicted that the switching locomotives used in yard operation use only hard coal. It also appears that defendant takes precautions against the issuance of soft coal smoke from its running locomotives, although it is evident that these precautions are not always effective. In using these locomotives, however, the defendant stands in a different position from that which it occupies with reference to a terminal yard. It is engaged, under legislative authority, in the performance of public duties and is ex-

empt, as a public servant, from liability to private suits so far as concerns the incidental damage accruing to the owners of nonadjacent lands through the proper and skillful operation of the railway. Richards v. Washington Terminal Co., 233 U. S. 546, 34 Sup. Ct. 654, 58 L. Ed. ——. There is no evidence in the case, nor any finding, that the locomotives from which black smoke is sometimes emitted are not operated in a proper and skillful manner.

Upon the whole case, we are of the opinion that on the findings of fact as they stand no case was made out for injunctive relief, and that the complaint should have been dismissed at the trial.

The judgment will therefore be reversed, and the complaint dismissed, with costs to the defendant in this court and in the court below.

INGRAHAM, P. J., and McLAUGHLIN, J., concur.

HOTCHKISS, J. (dissenting). The essential facts are as follows: Prior to 1907, defendant's line south of Seventy-Second street, or slightly below, at which point it connected with defendant's Sixtieth street terminal yard, consisted of its regular double track and no more. In consequence of the inadequacy of the Sixtieth street yard to furnish convenient facilities for switching, classifying, and storing cars and for other incidents of a terminal yard, defendant acquired by condemnation additional land, on which, from Seventy-Second street to north of Ninety-Second street, between the years 1887 and 1907, at which time Riverside Drive was developed and improved practically as it is at present, it laid two additional tracks parallel to its main line, which tracks, in conjunction with its original double tracks, it has since used as an extension of its Sixtieth street yard and for about the same purposes as that yard is used. The Sixtieth street yard is antiquated, no material change having been made in its area or arrangement for some 35 years, to which fact, aided by a greatly increased volume of traffic, may be attributed in large degree the necessity for the Seventy-Second street extension. In consequence of the constant use day and night of the tracks north of Seventy-Second street for yard purposes, residents of houses along Riverside Drive, a street of unique beauty, paralleling the Hudson river and the defendant's line of road (from which it is separated by a strip of varying width laid out as a public park, improved, on its easterly side only, by private dwellings and apartment houses, the district being exclusively one of residences), are seriously disturbed in their comfort, rest, and repose, which is broken by noise from steam locomotives, their straining and puffing, bells and whistles, the switching and bumping of cars, by unnecessary and preventable smoke from the engines, and by offensive odors from cars of live stock, which not only traverse the tracks but are permitted to lie thereon for hours at a time pending their distribution to the main yard below.

Plaintiff is the owner and one of the occupants of an apartment house located on the southeast corner of Eighty-Sixth street and Riverside Drive, and is among the sufferers from the conditions above described, although there is no proof that he has suffered pecuniary damage by depreciation of the value of his property or otherwise. Although in cases of alleged private nuisance no recovery can be had where mere

annoyance results, such exemption from liability extends only to cases where there is no material injury. If the conditions complained of affect a district of residences, it is not necessary that pecuniary loss should be shown; it is sufficient that they are offensive to the senses, disturbing to quiet, rest and sleep, and render "the enjoyment of life and property uncomfortable." Hutchins v. Smith, 63 Barb. 251, 254, 255; Garvey v. Long Island R. Co., 159 N. Y. 323, 328, 329, 54 N. E. 57, 70 Am. St. Rep. 550; Booth v. R. W. & O. T. R. Co., 140 N. Y. 267, 276, 277, 35 N. E. 592, 24 L. R. A. 105, 37 Am. St. Rep. 552; Bohan v. Port Jervis Gaslight Co., 122 N. Y. 18, 25 N. E. 246, 9 L. R. A. 711. I take the rule to be that, although a railroad or other public corporation is not liable for injuries to real property which are a necessary incident to the lawful and proper exercise of its franchise, such exemption from liability does not extend to turntables (Garvey v. Long Island R. Co., supra), pumping stations (Morton v. Mayor, etc., of N. Y., 140 N. Y. 207, 35 N. E. 490, 22 L. R. A. 241), gas retorts (Bohan v. P. J. G. L. Co., supra), engine houses (Cogswell v. N. Y., N. H. & H. R. R. Co., 103 N. Y. 10, 8 N. E. 537, 57 Am. Rep. 701), repair shops (Baltimore & Potomac R. Co. v. Fifth Baptist Church, 108 U. S. 317, 2 Sup. Ct. 719, 27 L. Ed. 739), or similar accessories, the particular location of which is largely, if not entirely, within the control of the corporation, and in the location of which the corporation acts in a private rather than a public capacity (Garvey v. Long Island R. Co., supra, 159 N. Y. 330, 54 N. E. 57, 70 Am. St. Rep. 550; Richards v. Washington Terminal Co., 233 U. S. 546, 34 Sup. Ct. 654, 58 L. Ed. ——). That the case of a railroad yard is governed by the same principle seems to me plain, and that the defendant's premises complained of herein are such a yard I have no doubt. The court has found that they are practically no more than an extension of the Sixtieth street yard, and that they are operated under defendant's rules and regulations affecting that yard. In view of the extent and nature of their use, the law defines them as a yard. Title "Railroad Yard," 33 Cyc. 1407. In this respect, the conditions are strikingly similar to those in People ex rel. City of Buffalo v. N. Y. C. & H. R. R. Co., 156 N. Y. 570, 51 N. E. 312.

Are there any facts of public necessity which justify the denial of the injunction to which I deem plaintiff otherwise entitled? The Thirty-Seventh finding is to the effect that:

"It is not necessary for the proper maintenance, operation, and use of the defendant's railroad that cars should be stored on the sidings between Seventy-Second and Ninety-Sixth streets."

By the Thirty-Eighth finding it appears that "it is neither requisite nor necessary that incoming freight cars should be classified on those tracks"; that both of the aforesaid uses are due to the congestion of traffic in the Sixtieth street yard; but that this congestion is due to the fact that that yard is badly arranged and has not been improved in 35 years. It is true the court found that the defendant "is now making full use of its facilities to their full capacity," and "that, to effectuate the in-movement and out-movement of freight and other trains

between Spuyten Duyvil and St. John's Park with as little delay as possible, the full use at all times of the four tracks" between the above points is necessary, and "that the capacity of said yard cannot be materially increased without the acquisition of about nine acres of land, title to which is in the city of New York, and about two acres title to which is in private owners" (fifteenth, nineteenth, and twenty-first findings).

The essence of the foregoing is that the defendant's use of the tracks north of Seventy-Second street for yard purposes is only necessary to enable it to handle its business "with as little delay as possible," which I construe to mean the utmost dispatch. It is not found that a prohibition against its improper use of these tracks will result in any unreasonable delay in handling traffic. All that the public is entitled to is reasonably prompt service. I do not think defendant should be permitted to maintain a continuing nuisance to the injury of one of the best residential sections of the city and seriously affecting residents of such district in their property rights, merely to enable defendant to serve the public with a measure of expedition beyond that to which it is legally entitled.

As to smoke, the finding is that it is due to the use of soft coal, by engines attached to incoming and outgoing trains, which kind of fuel is not necessary.

It is true that, in pursuance of legislative authority, plans for radically changing its motive power and method of operation were some years ago prepared by defendant and submitted to the local authorities for approval. How long the misfortunes which so far have attended their practical progress may continue seems wholly speculative. But it is possible that an injunction herein will prove to be a potent and healthful stimulus to all parties concerned and serve to expedite the reconciliation of differences which might otherwise continue indefinitely, to the further injury of plaintiff and his fellow sufferers.

The decree, however, is too broad, due to the vagueness of certain of its terms. It should be modified by striking out the words beginning with "and from in any other manner" to and including "constitute a nuisance," and as so modified affirmed, with costs.

DOWLING, J., concurs.