assaulted by the agent of defendant having charge of the ticket box.

Upon the foregoing statement of facts, it seems entirely clear that a contractual relationship between the plaintiff and defendant was established; and the circumstance that the defendant's agent in charge of the ticket box was under the impression that plaintiff had not deposited a ticket could not well affect the contract, nor defeat the jurisdiction of the court.

I agree with my associates that the case of Palmeri v. Manhattan Ry. Co., 133 N. Y. 261, 30 N. E. 1001, 16 L. R. A. 136, 28 Am. St. Rep. 632, is not unlike the present case, but I do not assent to the view that "that was clearly an action which could not have been brought in the Municipal Court." Reference to the Palmeri Case (page 265, 133 N. Y., page 1002, 30 N. E. [16 L. R. A. 136, 28 Am. St. Rep. 632]) shows that the Court of Appeals distinctly recognized the right of the plaintiff to maintain his action because of the contractual relation established between the parties. Says the court:

"Once the relation of carrier and passenger entered upon, the carrier is answerable for all consequences to the passenger of the willful misconduct or negligence of the persons employed by it in the execution of the contract which it has undertaken toward the passenger."

It seems to me, therefore, that all the cases referred to in the prevailing opinion are authority for the proposition that the Municipal Court had jurisdiction to entertain this action.

The judgment should be affirmed, with costs.

---

(103 App. Div. 164.)

JENNINGS et al. v. DELAWARE, L. & W. R. CO. et al.

(Supreme Court, Appellate Division, Third Department. March 8, 1905.)

1. RAILROADS—INTERSECTION—STATUTES—CONSTRUCTION.

Railroad Law (Laws 1890, p. 1084, c. 565) § 4, subd. 5, gives any railroad company the right to cross, intersect, join, or unite its road with any other railroad at any point on its route, and on the ground of such other company, with the necessary turn-outs, sidings, switches, and other conveniences, in furtherance of the objects of its connections. Section 12 (page 1087) provides for the appointment of commissioners to determine all differences that may arise between the parties, and requires that every railroad that shall be so intersected by any new railroad shall unite with it in forming the necessary intersections and connections, and grant the requisite facilities therefor. *Held*, that the intersection need not amount to a crossing by the new road, but the old road would be intersected whenever a turn-out or a switch was built to connect the two roads together.

2. SAME—APPOINTMENT OF COMMISSIONERS.

Under Railroad Law (Laws 1890, pp. 1084, 1087, c. 565) § 4, subd. 5, and section 12, where the railroads cannot agree on the manner of intersection and connection, commissioners are properly appointed to determine the differences.

3. SAME—PRIOR APPROPRIATION OF LAND—EFFECT.

Under Railroad Law (Laws 1890, p. 1084, c. 565) § 4, subd. 5, and section 12, the mere fact that the place at and on which a new road locates a switch or turn-out, for intersecting with an old road, prior to the application therefor, is devoted by the old road to a specific use in the discharge of its public duties as a railroad company, is not a bar to the

new company's right to the intersection, so long as the new road does not invade or take such lands, so that the use to which they have been appropriated will thereby be rendered ineffectual.

Appeal from Special Term.

Proceedings by Herbert T. Jennings and another, as temporary receivers of the Oneonta, Cooperstown & Richfield Springs Railway Company, against the Delaware, Lackawanna & Western Railroad Company and another. From an order overruling objections to the report of commissioners appointed under section 12 of the railroad law (Laws 1890, p. 1087, c. 565) to determining the point and manner of a track connection between the roads, defendants appeal. Affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, and CHESTER, JJ.

Lewis E. Carr, for appellants.

Sanders & Gray (Arthur M. Sanders, of counsel), for respondents.

PARKER, P. J. By subdivision 5 of section 4 of the Railroad Law (Laws 1890, p. 1084, c. 565), any railroad company is given the right to "cross, intersect, join or unite its railroad" with any other railroad at any point on its route, and upon the ground of such other railroad company, with the necessary turn-outs, sidings, switches, and other conveniences, in furtherance of the objects of its connections. Here seems to be a plain authority to the respondent to join or unite its road with the appellants' road. Such right to connect does not seem to be limited to those roads whose line, as laid out, shall cross the other road, but it applies to all roads. If the two lines come so near together that it becomes desirable, for any reason, that one shall join or make connections with the other, authority is here given to do so. But in this section no provision is made in case parties cannot agree upon the method of making and using such connections, and section 12 supplements it by providing for the appointment of commissioners to determine all differences that may arise between the parties. Such section also further requires that every railroad that shall be so "intersected" by any new railroad shall unite with it in forming the necessary intersections and connections, and grant the requisite facilities therefor. Evidently the two sections are intended to be read together, and, when thus read, the provision in section 12 that, whenever a road is "intersected by any new railroad," it shall unite, etc., clearly does not mean that the intersection must amount to a crossing by the new road. The old road would be intersected whenever a turn-out or a switch was built or became necessary to connect the two roads together. And in the event of such a junction being determined upon by the respondent, it became the duty of the appellants to unite with it in forming the necessary "intersections and connections," and to grant the requisite facilities therefor. I am of the opinion that, inasmuch as the two parties hereto could not agree upon the "manner of such intersection" and connection, a commission was properly appointed for that purpose. See N. Y., L. & W. R. Co. v. Erie R. Co., 31 App. Div. 378, 52 N. Y. Supp. 318.

It is further claimed by the appellants that the commissioners were without authority to make the connection which they did make, for the reason that the place at and upon which they have located the switch or turn-out had already been, prior to this application, devoted and applied by these appellants to a specific use in the discharge of its public duties as a railroad company, and therefore it could not be subjected by another company to an additional and different burden. It seems to be settled in this state, that the mere acquiring and appropriation by one railroad company of certain lands to its own use, or even to a specific use, will not prevent another company from taking the same lands for the purpose of crossing or connecting with such other road, but, on the other hand, the road seeking to effect the crossing or connection, notwithstanding the broad language of the statute and sections above cited, may not invade or take such lands if the use to which they have already been appropriated will thereby be rendered ineffectual. Thus a crossing or a switch for a connection may not be run through any building. Manifestly there could not be any concurrent use of lands so appropriated. Matter of Boston, Hoosac Tunnel & Western Ry. Co., 79 N. Y. 64. Nor could a crossing be run through lands already appropriated as a "yard" for the storing of cars on side tracks. The use of the same land for a crossing would be manifestly inconsistent with its use as ground for a storage track. People ex rel. City of Buffalo v. N. Y. C. & H. R. R. Co., 156 N. Y. 570, 51 N. E. 312. But it might be that the running of a switch into the yard of another company by one desiring to connect therewith would be such a concurrent use of the same ground as would not destroy the use to which it had first been put, nor so seriously obstruct that use as to practically nullify the first taking.

It is manifest that no crossing or connection can be made between two roads without the one invading the premises of, and to some extent inconveniencing, the other. But as appears from the statutes above cited, for such an invasion and inconvenience compensation may be made in damages, and commissioners are appointed to assess the same, and to determine the manner in which the least inconvenience will be caused to the company whose rights are thus invaded. The statutes are not broad enough to authorize even the commissioners to permit an invasion of lands already condemned that will amount to a practical destruction of the specific use to which they have been appropriated or for which they are manifestly needed. But when the crossing or connection proposed is not so inconsistent, and where proof is made to the commissioners that the use to which the land is already appropriated would not be materially impaired by subjecting it to the use which the crossing or the connection would necessarily require, then the commissioners may authorize the connection, and locate and arrange its place and manner of construction, and award such damages as the inconvenience caused thereby requires. Whether such a connection can be made is for the commissioners to determine in the first instance, subject, of course, to the approval of the court. Hor-

nellsville Elec. Ry. Co. v. N. Y., L. E. & W. R. Co., 83 Hun, 407, 411, 31 N. Y. Supp. 745; Matter of Boston, H. T. & W. Ry. Co., 79 N. Y. 64, 68, 69.

In the case at bar the commissioners have evidently concluded that the use to which the lands invaded by the respondents had already been applied by the appellants did not require their exclusive occupation, and that they were such as might fairly be appropriated, under the statute, to this new and additional use, and I do not discover in the evidence before us any convincing facts that would warrant us in disregarding that conclusion. The Special Term has confirmed their report. The respondent is entitled to a connection somewhere with the appellants' road. No other or better one is disclosed by the evidence, nor by any suggestion of the appellants. It is not so clearly apparent that the proposed connection will so substantially obstruct its present use as to forbid its being taken at all, and I therefore conclude that this order should be affirmed, with costs.