VILLAGE OF WAVERLY v. WAVERLY, S. & A. TRACTION CO. et al.

(Supreme Court, Appellate Division, Third Department. May 5, 1909.)

1. STREET RAILROADS (§ 28\*)—CONSTRUCTION OF FRANCHISE—SWITCHES AND EXTENSIONS.

A franchise gave the right to build a street railroad on B. street to its intersection at right·angles with C. street, and thence north thereon, but no part of the route was to be west of the center of line of C. street and the center line of the road was to coincide with the center line of the street, though necessary switches, were permitted. It was sought to connect the tracks at the street intersection with a private right of way extending westerly from the westerly line of C., the north and south street near the northerly line of B. street. *Held*, that, while the point where the movable rails of the diverging tracks would *connect*, it would be a switch as ordinarily understood, from that point, and especially from the point where the proposed diverging tracks separate from the present tracks to the west line of C. street, it was an extension of the line, but that, whether it was a switch or an extension, it would run to the west of the track on C. street, and was therefore outside the limits of the franchise.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 28.\*]

2. INJUNCTION (§ 128\*)—TEARING UP STREET FOR STREET RAILROAD—EVIDENCE.

That defendant street railroads undertook under cover of night to lay tracks is convincing proof that they then supposed that they had no lawful·right to tear up the street at the place in question, and that they then believed they were laying an unauthorized extension, and not a mere switch.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 128.\*]

3. STREET RAILROADS (§ 28\*)—CONNECTION WITH INTERURBAN LINE.

Laws 1890, p. 1084, c. 565, § 4, subd. 5, giving any railroad the right "to cross, intersect, join or unite its railroad with any other railroad before constructed at any point on its route," authorizes a connection of roads which do not in fact intersect, but come so near together that it becomes desirable, as where two interurban street railroads are within about 300 feet of each other.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 28.\*]

4. STREET RAILROADS (§ 28\*)—CONNECTION OF INTERURBAN LINES—RIGHTS AND AUTHORITY OF VILLAGE TRUSTEES.

Where connection is proposed to be made in a village street between interurban lines for the purpose of exchanging cars, the village trustees have the right to participate in determining the place and manner of making the intersection, though they would have no right to impose unreasonable or unusual conditions, or conditions intended to defeat or prevent it.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 28.\*]

Appeal from Special Term, Tioga County.

Injunction by the Village of Waverly against the Waverly, Sayre & Athens Traction Company and others. From a judgment for plaintiff, defendants appeal. Modified and affirmed.

Appeal by each of the defendants from a judgment of the Supreme Court, entered in the clerk's office of the county of Tioga, on the 18th day of March, 1908, on a decision of the court after a trial at Special Term.

The defendant·Waverly, Sayre & Athens Traction Company is a corporation operating a street surface railway in the village of Waverly, and its lines extend through Waverly and South Waverly to Sayre and Athens, in Pennsylvania. In 1893 the trustees of the plaintiff granted a franchise upon certain conditions to a corporation known as the "Susquehanna Valley Electric Trac-

tion Company" to operate a street surface railway upon certain streets of the village described therein, one route being "through Broad street to Chemung street; thence along and through Chemung street to Ithaca street, * * * and also to construct such switches and turnouts as may be necessary for the convenience and useful working of the street railroad." No part of the route described in such franchise is located west of the center line of Chemung street. One of the conditions upon which the franchise was granted, was that "the center line of such railroad shall at every point along its route, except as otherwise designated by this board of trustees, coincide with the center line of the street or avenue upon which it is constructed."

The defendant the Waverly, Sayre & Athens Traction Company succeeded to the rights, privileges, and franchises of said Susquehanna Valley Electric Traction Company in 1894. The defendant Elmira, Corning & Waverly Railway is a corporation which, at the time of the trial, was engaged in the construction of railroad running from Waverly westerly through Elmira to Corning. The contractor for such construction is the defendant Powers & Mansfield Company. Broad street is one of the principal thoroughfares in the plaintiff village, and intersects Chemung street at right angles. The tracks of the defendant Waverly, Sayre & Athens Traction Company run along the center of Broad street westerly to Chemung street, where they turn into and extend northerly along the center line of Chemung street. That company has also built a line on a private right of way, extending westerly from the westerly line of Chemung street near the northerly line of Broad street, as that street is continued, about 300 feet in a cul de sac westerly of its intersection with Chemung street, and such line constructed on said private right of way connects with the line of the Elmira, Corning & Waverly Railway at a point about 600 feet from the westerly line of Chemung street.

On April 30, 1906, the traction company and the company operating the railway entered into a trackage and traffic agreement for their mutual advantage, under which they agreed to make connection between their respective tracks. None of the defendants has obtained any consent or permission from the plaintiff to build, operate, maintain, or extend the railroad or tracks in question. On the night of October 12, 1906, a little before midnight, a body of between 200 and 300 Italian laborers came to the intersection of Broad and Chemung streets and commenced digging up the street west of the tracks of the traction company on Chemung street and north of its tracks on Broad street. Such laborers were under the direction of an employé of the Powers & Mansfield Company and were the same men who were at that time employed in the construction of the Elmira, Corning & Waverly Railway Company line west of Waverly, and they were employés of the Powers & Mansfield Company. The president of the village appeared upon the scene and called out special policemen and the members of the fire department, and the laborers were driven off the street and were not permitted to complete the construction of the tracks begun by them at that place. This action followed, and the court, after a trial, has found that the carrying out of such work constituted a nuisance, that in attempting to do it the defendants were trespassers, and has granted a judgment containing a permanent injunction enjoining the defendants from constructing a railroad at the point in question, without first having obtained the consent of the local authorities having control of the streets, and from such judgment all the defendants have appealed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Frederick C. Hawkes, for appellant Powers & Mansfield Co.

Thomas J. Keenan, for appellant Waverly, Sayre & Athens Traction Co.

Frederick Collin, for appellant Elmira, C. & W. Ry.

H. D. Hinman, for respondent.

CHESTER, J. The Waverly, Sayre & Athens Company insists that, under the franchise to the Susquehanna Valley Electric Traction

Company to which it succeeded, it has the right to construct the tracks in question because of the permission therein contained to construct such switches and turnouts as may be necessary for the convenient and useful working of the street railroad. It is not argued that the proposed construction is a "turnout" in the commonly understood meaning of that term; that is, a track in addition to a single track to permit cars to pass each other. But it is claimed that it is a switch. At the point where the movable rails of the diverging tracks connect, it undoubtedly is a "switch," as that term is ordinarily understood; but from that point, and especially from the point where the proposed diverging tracks separate from the present tracks, to the west line of Chemung street, can it fairly be regarded as a switch? We think not, and that the learned trial court was correct in holding that it was not, but that it was an extension of the line instead. A track like that appears to have been so regarded by the traction company in its petition to the trustees of the plaintiff for leave to construct a railroad from the intersection of its line at Broad and Chemung streets in a westerly direction along Broad street, where that proposed line was described to be "an extension of its present tracks," and where it was said that it is necessary pursuant to the laws of the state to obtain the consent of such trustees to enable it to construct, maintain, and operate "such extension."

The fact that the defendants took the law into their own hands and undertook under cover of night to lay down the tracks in question, until they were prevented by the public authorities, is convincing proof that they then supposed that they had no lawful right to tear up the street at that place, and that they then believed that they were engaged in laying an extension, rather than a switch.

But, whether it is a switch or an extension, the defendant traction company, as the successor of the rights of the Susquehanna Valley Electric Traction Company, had no right to lay the track in question for the reason that such franchise only granted the right to construct railroad lines in the center of the streets on the routes therein described. One of these was located on Chemung street. The franchise therefore limited the operation of the road to the territory east of a track laid in the center of that street and gave no right to construct or operate a road west of the track so laid. The proposed track runs to the west thereof and is therefore outside of the limits of the franchise. If that phase of the case alone is to be considered, it would appear that the judgment enjoining the construction until the consent of the village trustees is obtained is proper.

But another situation must be taken into account, and it is one in which, not the parties alone, but the public, are concerned. The traction company is lawfully operating its road from Athens, in Pennsylvania, to Waverly, and through Broad street to Chemung street in Waverly, and has a short piece of track on its own land extending westerly of Chemung street to and uniting with the tracks of the Elmira, Corning & Waverly Railway, which has in process of construction a road from Waverly to Corning. The latter road appears to have the lawful right to operate in Waverly, for, while it has not

received the consent of the local authorities, it crosses no streets, and is not operated on any highways of the village, but is constructed there wholly upon a private right of way. The only thing needed to unite these two roads is the construction of the tracks in dispute here, a distance of about 60 feet. The traction company and the railway company have entered into a traffic agreement, by which, for their mutual advantage, they have agreed to exchange cars and permit the running of them over each others road.

The Legislature, in the promotion of the public interests, has provided means for compelling the uniting of intersecting roads. Pursuant to subdivision 5 of section 4 of the railroad law (Laws 1890, p. 1084, c. 565), any railroad company is given the right "to cross, intersect, join or unite its railroad with any other railroad before constructed at any point on its route." It is also provided, in section 12 of the railroad law, that:

"Every railroad corporation, whose road is or shall be intersected by any new railroad, shall unite with the corporation owning such new railroad in forming the necessary intersections and connections, and grant the requisite facilities therefor."

Here the roads in question have agreed upon the method and are seeking to make the connection; but the trustees of the plaintiff, who control the street where the connection must be made, stand in the way. It is urged on behalf of the plaintiff that these are not intersecting roads within the meaning of the statute; but it has been held in this department that, although the roads do not in fact intersect, but come so near together that it becomes desirable, for any reason, that one shall join or make connections with the other, authority is found in subdivision 5 of section 4 of the railroad law for that purpose. Jennings v. D., L. & W. R. R. Co., 103 App. Div. 164, 93 N. Y. Supp. 374.

We think therefore a case is presented which is within the beneficent purpose of the statute. Nevertheless, where the connection is proposed to be made in a public street, as stated in the recent case of Village of Ft. Edward v. H. V. Ry. Co., 192 N. Y. 139, 84 N. E. 962:

"While the railroad companies have the right to intersect their tracks for the purpose of exchanging cars from one road to the other, yet the village trustees have the right to participate in the determination of the place and the manner of making such intersection."

In determining such place and manner, the trustees would have no right to impose unreasonable or unusual conditions upon the roads, or conditions intended to defeat or prevent the uniting of their tracks. The trustees have the right, however, and it is their duty, as stated in the case last cited, "to guard and preserve the streets from unnecessary encroachments or dangers to which the traveling public may be subjected," and to see that the manner of connection is such as will interfere as little as possible with the rights of travelers on the street and on the sidewalk which will necessarily be crossed by the railway tracks if laid at the point in question.

But the defendants and the public have the right under reasonable conditions pursuant to law to have these two railway systems united,

Here the two railroads have agreed as to the intersection, but the trustees of the village have not agreed or given their consent thereto. In the case cited the Court of Appeals construed section 12 of the railroad law in connection with section 11 thereof, which provides, among other things, that no railroad corporation shall construct its road in, upon, or across any street in any incorporated village without an order of the Supreme Court of the district in which such street is situated and held that, if the railroad corporations in question and the municipal corporation, as represented by its trustees, are unable to agree as to the point and manner of intersecting the tracks of the two companies in the street, the duty devolves upon the Supreme Court to determine the same.

We think therefore that the judgment should be, modified so as to provide that the defendants shall be enjoined from constructing the railroad in question until they shall agree with the local authorities upon the place and manner of making the intersection, and, in case they are unable to agree, until the court upon application properly made shall determine as to the place and manner of the intersection, and, as so modified, affirmed, without costs to any party. All concur; SMITH, P. J., in result.