WILLIAM R. HEARST, Appellant, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

Appeal — reversal of judgment by Appellate Division — when it must be assumed that reversal was on the law, the Court of Appeals is bound by findings of trial court — railroads — action to restrain alleged nuisances of railroad in maintenance of its tracks and operation of its trains — relative rights of railroad company and of adjacent property owners.

1. When the Appellate Division reverses a judgment but does not specify that such reversal is on the facts and it does not make any new finding of fact, it must be assumed that the reversal was on the law, and this court is bound by the findings made by the trial court

if supported by the evidence and unimpeached by any erroneous rulings. (Code Civ. Pro. § 1338.)

2. Railroads constructed and operated for the public use are not subject to actions in behalf of neighboring property owners for the ordinary damages attributable to the operation of the railroad in the absence of negligence. The immunity is limited to such damages as naturally and unavoidably result from the proper conduct of the road. It includes the noises and vibrations incident to the running of trains, the necessary emission of smoke and sparks from the locomotives and similar annoyances inseparable from the normal and non-negligent operation of a railroad.

3. This immunity exists so long as the acts of a railroad company in carrying on its business in and about its yards are not shown to be negligently done or to be outside the range of operations necessary or reasonably incidental to the proper operation of its road in a situation which lawfully exists. But when it is found that the acts complained of were injurious and were not necessarily or reasonably incidental to the operation of a railroad at the point in question, but could be performed elsewhere, a right to relief arises in favor of the injured property owner.

4. Facts examined and the foregoing rules applied in an action brought by a property owner and resident in the neighborhood of defendant's yard and tracks to restrain alleged nuisance in the maintenance of its tracks and operation of its trains, and, *held*, (1) that the habitual and indefinite storing of live stock cars outside its freight yard and near the plaintiff's residence should be enjoined; (2) that the use by the defendant of its through tracks for the purpose of separating and classifying cars intended for its other yards was not reasonably incident to the operation of the yard at the point in question; (3) that the railroad company, having the right, expressly found against the plaintiff, to maintain and operate its freight yard, was justified in any use of its tracks at their junction with said yard which was reasonably incidental to that lawful situation and to the proper maintenance and use of its yard although the method of operation involved accompanying noises; (4) that defendant's rules which required outgoing engines to be supplied with enough anthracite coal to carry them some distance beyond the point in question and that the fires on incoming engines should be banked above that point and no smoke or cinders emitted, are sufficient under ordinary circumstances and that the company should be held to the observance of those regulations.

*Hearst* v. *N. Y. C. & H. R. R. R. Co.*, 163 App. Div. 475, modified.

(Argued April 22, 1915; decided June 15, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 22, 1914, upon an order reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term, and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Bainbridge Colby* for appellant. The railroad's charter did not authorize it to construct and maintain classification, storage and terminal yards wherever it saw fit in the city, without reference to the rights of others. In selecting the place for its classification, storage and terminal yards, the railroad acted altogether in its private capacity. With respect to such acts, the railroad stands on the footing of an individual, and is entitled to no superior rights of immunity. Consequently, when the yards so located are so maintained and operated as to constitute a private nuisance, and when the causes of the annoyance and discomforts are continuous, courts of equity will interfere and restrain the nuisance. (*Baltimore & Potomac R. R. Co.* v. *Fifth Baptist Church*, 108 U. S. 317; *Richards* v. *Washington Terminal Co.*, 233 U. S. 546; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10; *Garvey* v. *Long Island R. R. Co.*, 159 N. Y. 323; *Beseman* v. *Penn. R. R. Co.*, 50 N. J. Law, 235; *Ridge* v. *Penn. R. R. Co.*, 58 N. J. Eq. 172; *Penn. R. R. Co.* v. *Angell*, 41 N. J. Eq. 316; *Galveston, H. & S. A. Ry. Co.* v. *Miller*, 93 S. W. Rep. 177; *R. C. Church* v. *Penn. R. R. Co.*, 207 Fed. Rep. 897.) One who pleads legislative authority for particular acts which would otherwise be a nuisance, must show that the legislature authorized in express terms or by clear and unquestionable implication the doing of the very acts complained of; or that the statute was imperative and could not be executed without causing a nuisance.

(*Morton* v. *Mayor, etc.,* 140 N. Y. 207; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.,* 103 N. Y. 10; *Freeman* v. *L. & B. Ry. Co.,* L. R. [25 Ch. Div.] 423.) The acts on the part of the defendant complained of have been found to constitute in fact a nuisance. This finding is abundantly sustained by the evidence. It is not necessary to allege and prove negligence. (*Hogle* v. *Franklin Mfg. Co.,* 199 N. Y. 388; *Roscoe Lumber Co.* v. *Standard, etc., Co.,* 62 App. Div. 421; *Thomas* v. *Brackney,* 17 Barb. 654; *Williams* v. *Hynes,* 23 J. & S. 86; *Garvey* v. *L. I. R. R. Co.,* 159 N. Y. 323; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.,* 103 N. Y. 10; *B. & P. R. R. Co.* v. *F. B. Church,* 108 U. S. 744.) The clause enjoining defendant "from permitting its locomotives in passing over said tracks to emit smoke caused by burning soft coal" is sustained not only by the trial court's finding that it is one of the constituent acts in the nuisance which arises from the unauthorized location of a switching, storage and classification yard, but it is also a nuisance as the result of negligent operation, irrespective of the relation of smoke emission to the nuisance of the switching and storage terminal. (*Booth* v. *R., W. & O. T. R. R. Co.,* 140 N. Y. 267; *Bamford* v. *Turnley,* 3 Best & Smith, 62; *Campbell* v. *Seaman,* 63 N. Y. 568; *Beir* v. *Cooke,* 37 Hun, 38; *City of Rochester* v. *Macauley, etc., Co.,* 199 N. Y. 207; *Richards* v. *Washington Terminal Co.,* 233 U. S. 546.)

*Austen G. Fox* and *Alexander S. Lyman* for respondent. The defendant has not located a terminal yard north of its terminal yard at Sixtieth street, and the uses to which it puts its approaches to its yard at Sixtieth street are lawful uses. (*B. & A. R. R. Co.* v. *Vil. of Greenbush,* 52 N. Y. 510; *D. & H. C. Co.* v. *Vil. of White-hall,* 90 N. Y. 21; *Matter of City of Buffalo,* 68 N. Y. 167; Lewis on Eminent Domain [3d ed.], § 830; *Flinn* v. *N. Y. C. & H. R. R. R. Co.,* 142 N. Y. 11; *L. I. R. R.*

*Co.* v. *Sherwood,* 205 N. Y. 1; *Bennett* v. *L. I. R. R. Co.,* 181 N. Y. 431; *Friedman* v. *N. Y. & H. R. R. Co.,* 89 App. Div. 38; 180 N. Y. 55; *U. S. Leasing Co.* v. *N. Y. C. & H. R. R. R. Co.,* 158 App. Div. 875; *Dolan* v. *C. & N. W. Ry. Co.,* 118 Wis. 362; *Taylor* v. *Seaboard Ry. Co.,* 145 N. C. 400.)

HISCOCK, J.   This action was brought by appellant to enjoin certain uses by respondent of its railroad tracks west of Riverside Drive and between Seventy-second and Ninety-sixth streets in the city of New York.   The trial court found that various acts performed by respondent in the maintenance and operation of its said tracks were unauthorized, unlawful and constituted nuisances with resulting special injuries to the appellant and rendered judgment enjoining the same.

The Appellate Division reversed this judgment but did not state that such reversal was on the facts and it did not make any new finding of fact.   Under these circumstances we must assume that the reversal was on the law and that we are bound by the findings made by the trial court if supported by the evidence and unimpeached by any erroneous rulings.   (Code Civ. Pro. section 1338.)

Many of the underlying and surrounding facts found by the court were uncontradicted, and amongst them are the following:

Appellant owns and resides in an apartment house situated at the southeast corner of Eighty-sixth street and Riverside Drive, in what is a fine residential portion of the city of New York.   Respondent owns and operates immediately west of the Riverside Drive and Parkway, and at a level much below the same, a railroad which north of Seventy-second street consists of four tracks. These tracks were laid under the authority of the legislature and of the municipal government which authorized the construction and operation of " a double track of rails with suitable turnouts along the line of the Hudson River

from Spuyten Duyvil Creek to near 68th Street, occupying so much of the Twelfth Avenue as lies along the shore." The middle two tracks are through ones, while the outside track on each side is a siding or turnout. Between Seventy-second and Sixtieth streets the respondent maintains a freight and terminal yard consisting of many tracks and where, amongst other things, it makes up outgoing freight trains and receives incoming freight trains and distributes the freight transported thereby. It also maintains and operates two other freight yards south of this one and known respectively as the Thirtieth street and John street yards.

Appellant has no title to or interest in the lands covered by respondent's tracks, but his right to relief, if at all, is based upon the ground that he has suffered special injury and damages from various acts committed by it and of which complaint is made.

Other material facts found by the trial court and which are the direct basis for the contest between the parties are controversial, not so much because of any conflict of evidence concerning their existence, as because of a conflict of opinion concerning their significance and sufficiency to sustain the conclusions of law reached by the trial court. Amongst these facts thus found are the ones which may be summarized for the purposes of this opinion as follows:

Owing to the increase of business the respondent's freight yard below Seventy-second street has become inadequate and although it is badly arranged and no substantial improvements have been made therein for many years the respondent " is now making full use of its facilities to their full capacity," and "to the fullest extent which the existing area of said yards and terminals and the movement of freight cars and the disposition of freight permits," and "the capacity of said. yards cannot be materially increased without the acquisition of about nine acres of land, the title to which is in the city of New

18

York, and about two acres of land, the title to which is in private owners." Under an act of the legislature "to provide for the regulation and improvement of the respondent's railroad terminals and purchase thereof and of the motive power to be used thereon * * * and * * * to authorize the city of New York to grant real property and rights" to the respondent, the latter submitted to the proper authorities of the city of New York, October 1, 1911, and May 12, 1913, respectively, plans for enlarging and improving its yard and terminal facilities below Seventy-second street, but the city has never acted upon said plans and the railroad company is awaiting action thereon; to effect the in-movement and out-movement of freight with as little delay as possible "the full use at all times of the four tracks maintained by the defendant (between Seventy-second and Ninety-sixth streets) is necessary."

While it was found in general terms that the respondent used its tracks between the streets last mentioned "as a freight and terminal yard for the purpose of switching, classifying and storing freight cars," this finding was modified by and must yield to findings of the specific acts which respondent performed in the use of its said tracks and which the trial court held to constitute nuisances. Under these latter findings it appears that outgoing freight trains are drawn from the freight yard on to the through tracks by a switching engine which is then detached and a road engine attached which draws the train away, and in a similar manner the road engines on incoming trains are detached before reaching the yard and the trains thenceforth handled by switching engines. The cars in some of these incoming trains are classified for the different yards and the cars in other trains are not even thus classified. In the cases of the first class of trains the cars billed for the Thirtieth street and John street yards are drawn into the Sixtieth street yard and thence dispatched to the lower ones, and the cars billed

for the Sixtieth street yard frequently are stored for some
considerable time on one of the sidings and thence dis-
tributed from the sidings or through tracks on to the
many tracks of the yard by a switch engine which
"kicks" them in on the appropriate tracks.    In the cases
of trains which are entirely unclassified for the different
yards, in addition to the operations last mentioned, cars
are switched back and forth upon the tracks outside of the
yard for the purpose of classifying them for the different
yards.    In the neighborhood of thirty or forty cars filled
with live stock are brought in daily and frequently allowed
to stand on the sidings outside of the yards for many
hours at a time.

Switch engines and ordinarily outgoing road engines
are supplied with and use hard coal.    Incoming road
engines are supplied with soft coal but ordered to bank
their fires before coming into the locality in question, and
which, if done, would practically avoid the emission of
soft coal smoke and soot, but notwithstanding these orders
road engines frequently emit a large amount of soft coal
smoke and soot which penetrate appellant's dwelling, and
he has been annoyed and his comfort disturbed by the
noise of switching, by the odors from the live stock cars
and by the smoke and soot caused by burning soft coal.

The respondent was not found to be guilty of any neg-
ligence in the operation of its railroad.

The basis of appellant's complaint against the respond-
ent, except that relating to the use of soft coal, is that
it has been using its tracks above Seventy-second street,
which were designed and authorized merely for the pas-
sage of trains, for yard purposes with resulting annoy-
ance and injury to him.    It is not disputed and, of
course, cannot be that a certain amount of disturbance
and annoyance is inevitably incident to the operation of a
steam railroad and must be endured by those who, like
the appellant, live near to it.    The assertion here is that
the use by respondent of its tracks in the locality involved

for yard purposes has greatly increased these annoyances, and that being unauthorized such uses constitute a nuisance that may be enjoined. I have no doubt that appellant has established sufficient injury as the result of many of these various acts to permit him to maintain this action if they be thus unlawful, and the question which I shall, therefore, first consider is the one whether the court found on justifying evidence that the respondent did devote its tracks above Seventy-second street to so-called yard purposes in a manner which could be said to be unreasonable, unauthorized and unlawful.

After findings relating to the size and capacity of the Sixtieth street yard, its use for all the purposes ordinarily served by an important terminal and freight yard, and to which reference has already been made, it was held by the trial court as matter of law, " That the defendant has lawful authority to maintain and operate its said yard south of 72nd street and the four tracks constructed upon its right of way extending from said yard northerly to Spuyten Duyvil." It also seems to have been assumed that respondent was lawfully maintaining and operating the two freight yards situate south of this one. Therefore, the appellant is bound by the view that respondent has a right to operate a large terminal freight yard and traffic tracks which have a junction point at Seventy-second street. While it may be assumed that the maintenance and operation of the tracks above Seventy-second street were not authorized primarily or generally for yard purposes, the evidence sufficiently indicates, and ordinary information tells us, that where through tracks and a freight yard join each other the use of each must be somewhat adjusted to that of the other. Trains cannot be run from one upon the other with the same regularity, freedom or independence as elsewhere upon through tracks. The respondent having the right, expressly found against the appellant, to maintain and operate its freight yard, was justified in any use

of its tracks at the junction with said yard which was reasonably incidental to that lawful situation and to the proper maintenance and use of its yard. Within the authorities hereinafter referred to I think that must be the rule applicable to such a situation, and what is reasonable and incidental must be settled by the conditions which thus existed.

When in the light of this obvious rule we look through and beyond the general findings that the respondent improperly and unnecessarily used its tracks above Seventy-second street for yard and terminal purposes and consider the specific acts which it is found to have committed, it does not appear to me that many of these were shown to be unreasonable and unlawful. And since I do not entertain the same view about the character and propriety of all the acts which have been enjoined, it will be necessary, briefly, to consider separately each class.

The court enjoined the practice of having switch engines receive incoming freight trains from, and deliver outgoing trains to, road engines on the tracks above Seventy-second street. This method of operation necessarily involved some switching of engines and starting and stopping of trains with accompanying noises. I find nothing in the evidence which justified the court in finding and holding that this was an improper practice. The evidence shows beyond dispute that yard engines and road engines are entirely different, and, therefore, there must be an exchange of one for the other at some point near the junction of yard and through tracks. There is nothing to show that it is any more unusual or improper for the yard engines to receive and deliver trains outside the yard than it would be for the road engines to run into the yard. In fact, it would seem that a practice which required enormous road engines manned by crews unaccustomed to yard operations, to run into a crowded yard would invite accidents and deserve criticism.

Another series of operations condemned and enjoined by the trial court were involved in the handling of incoming freight trains. As has already been stated, in some of these trains cars were classified for the three yards which have been mentioned, and in these cases the cars for the lower yards were detached from the train and drawn into the Sixtieth street yard and thence to their destination. The cars billed for the Sixtieth street yard were stored on one of the turnouts or sidings until the yard was ready, when a yard engine coupled to the rear of them pushed or " kicked " them in upon the appropriate track.

There is no evidence that this method of drawing down the cars for the lower yards was improper. The only feature complained of seems to be that the incoming trains were stopped before reaching the Sixtieth street yard for this operation, but what has already been said sufficiently covers this point. It is not found that the storage of cars on the siding, outside of live stock cars hereafter to be referred to, resulted in any annoyance or damage to appellant. The practice of using the through tracks in part for the operation of pushing or " kicking " cars upon different tracks of the yard presents a closer question than the others, but with some hesitation I reach the conclusion that under all of the circumstances the evidence did not sustain the conclusion that it was improper. The nearest of these movements was several blocks from appellant's residence. The delivery of these cars to the yard obviously could not be made at any other place than at the yard. The cars could only be pushed on the different stub tracks from the rear; they could not be drawn on by an engine coupled in front. An arrangement of the yard with a stem track entirely within its limits long enough for the purposes of these movements would destroy the capacity of a large part of the yard for any other use. Under these circumstances I do not think it should be held that the use of the through tracks, so far as necessary to accomplish

a delivery of the cars upon the appropriate tracks of the yard rather than in solid trains on one track was unreasonable, or anything more than was incidental to a junction point between a yard and through tracks.

I now come to some uses of the through tracks which were found to be, and I think were, unauthorized and injurious to appellant.

The evidence shows and it was found that at times the respondent was accustomed to bring in daily as many as 35 cars loaded with live stock and that these were allowed to lie outside of the yard habitually and for long periods emitting foul odors which penetrated the appellant's residence; also that in some of the incoming trains the cars were not at all classified for the different yards and that a large amount of switching was done upon the tracks in question for the purpose of classifying and separating the cars billed for the different yards which after such classification were treated in the manner already described as applicable to classified trains. I think that the evidence justified the conclusion that neither of these operations was reasonably incidental to the operation of the Sixtieth street yard and tracks and, therefore, proper. In view of the annoyance resulting from the storage of the live stock cars and the comparatively small number thereof the court could fairly find that under ordinary circumstances they either ought to be drawn into the yard or stored above the vicinity of appellant's dwelling until the yard was ready for them. I do not mean to say. by this that under all circumstances the respondent would be bound to move them into the yard without any of that delay naturally incident to the movement of freight trains into a yard, but it ought not to be permitted to store them habitually and indefinitely in the vicinity of appellant's dwelling to his damage and annoyance.

In like manner it could be said that the respondent was not entitled to use its tracks in the vicinity of the

Sixtieth street yard for the purpose of separating and classifying cars intended for other yards. That was not a use of the through tracks reasonably incident to the use of the Sixtieth street yard.

I think the views above expressed are sustained by the principles of law applicable to such facts as are before us. So long as the acts performed by it were not shown to be negligently done or to be outside the range of operations necessarily or reasonably incidental to the proper management of its road in the situation which lawfully existed respondent was immune from attack by neighboring property owners like appellant, even though they were disturbed. (*Richards* v. *Wash. Term. Co.*, 233 U. S. 546.)

But when it could be found that the acts complained of were injurious and were not necessarily or reasonably incidental to the operation of a railroad at the point in question but could be performed elsewhere, a right to relief arose in favor of the injured property owner. (*Baltimore & P. R. R. Co.* v. *Fifth Baptist Church*, 108 U. S. 317; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10; *Garvey* v. *L. I. R. R. Co.*, 159 N. Y. 323.)

I do not find anything in chapter 777, Laws of 1911, providing "for the regulation and improvement of the railroad, terminals and approaches thereto * * * of the New York Central and Hudson River Railroad Company in the city of New York" which relieves the respondent from the application of the principles laid down in the decisions last cited.

There is still left for consideration that portion of the judgment which was rendered in effect, as we construe it, restraining respondent from using soft coal in its locomotives within the territory involved in the action.

As has already been stated, it was found or appeared without contradiction that only anthracite coal was used on switch engines and that respondent's rules required outgoing road engines to be supplied with enough similar

coal to take them beyond Ninety-sixth street, and that
the fires on incoming road engines should be so banked and
prepared above that street that no smoke and cinders
should be emitted; that nevertheless it frequently hap-
pened that large quantities of smoke and soot from soft
coal were emitted and carried into appellant's dwelling.
There was no finding of improper construction of engines or
of negligence. There was the somewhat ambiguous find-
ing that " it is not requisite for the proper management,
operation and use of the respondent's railroad that loco-
motives should burn soft coal or emit smoke caused
thereby." If this finding should be interpreted as mean-
ing that it is a physical possibility to fire locomotives
with some other fuel than soft coal, it of course is cor-
rect. But I find no evidence that it is unlawful, unusual
or improper railroad management to use soft coal, or that
it is feasible or practical from an economic standpoint for
respondent to supply all of its road locomotives with hard
instead of soft coal, or to exchange hard coal for soft
coal on its incoming engines so that the latter will form
no part of the fires below Ninety-sixth street. On the
contrary, it is a matter of common knowledge that rail-
roads and factories throughout the country are constantly
using soft coal as a matter of economic necessity.

Thus we have it that the respondent having been
authorized to operate a railroad is doing it so far as con-
cerns the feature now under consideration without negli-
gence and in a manner which is neither found nor shown
to be unlawful or unusual. Under these circumstances
I do not think that the appellant had the right to com-
plain and enjoin respondent in the broad terms employed
in the judgment.

In *Richards* v. *Washington Terminal Company*,
already cited, it is said, in considering a somewhat similar
complaint against a railroad, " And by a great and
preponderant weight of judicial authority, * * * it
has become established that railroads constructed and

operated for the public use, although with private capital and for private gain, are not subject to actions in behalf of neighboring property owners for the ordinary damages attributable to the operation of the railroad, in the absence of negligence. Such roads are treated as public highways * * * with the exemption * * * so far as concerns the incidental damages accruing to owners of non-adjacent land through the proper and skillful management and operation of the railways. * * * The immunity is limited to such damages as naturally and unavoidably result from the proper conduct of the road. * * * It includes the noises and vibrations incident to the running of trains, the necessary emission of smoke and sparks from the locomotives, and similar annoyances inseparable from the normal and non-negligent operation of a railroad." (p. 553.) (See, also, *Roman Catholic Church* v. *Pennsylvania R. R. Co.*, 207 Fed. Rep. 897.)

However, while no foundation is found in the evidence for the unqualified injunction granted against the use of soft coal, the evidence produced by the respondent itself does show that it is perfectly feasible greatly to mitigate the annoyance which undoubtedly would result to appellant and other property owners on Riverside Drive from the unrestricted use of that kind of fuel. It is undisputed that yard engines are equipped with anthracite coal and that its rules already adopted for supplying outgoing road engines with a quantity of hard coal and requiring the proper care of fires on incoming engines will avoid the emission of smoke and soot from soft coal under all ordinary circumstances. There is no reason why respondent should not be held to the observance of these regulations under usual conditions and the injunction granted against it be modified only to the extent of allowing the use of soft coal under the enforcement of the rules and regulations which it has itself formulated.

The views which have been expressed leading to an

affirmance of the judgment of the Special Term in so far as it enjoins respondent's present methods of storing incoming live stock cars and of classifying the cars of incoming trains for the different yards, very likely may require substantial modifications of and additions to respondent's terminal facilities in New York, and we are led to consider the question whether the enforcement of such injunctive provisions should not be stayed for a reasonable time in order to enable such readjustment to be made without such serious derangement of respondent's operations as will result in great disturbance of the convenience and interests of shippers of freight. We cannot well overlook the finding of the trial court "That to effect the in-movement and out-movement of freight and other trains between Spuyten Duyvil and St. John's Park with as little delay as possible, the full use at all times of the four tracks maintained by the defendant between these points is necessary."

In indicating our views on this question of a stay we are inclined to take into account some facts which lie outside the strict legal rights of the parties to this controversy. It is perfectly apparent that a condition exists in the neighborhood covered by appellant's complaint which is unsatisfactory to every one. Appellant certainly makes it clear that he and other property owners living on Riverside Drive are much annoyed and disturbed even by operations which we are holding the respondent has a right to conduct with immunity from legal complaint. In like manner it seems to be plain that at best the situation is an inconvenient one for the respondent, and I have no doubt that in addition the public are more or less inconvenienced and indirectly damaged by the inadequate terminal facilities now existing. It is expressly found that these conditions can only be relieved for all of these interested parties through the acquisition by respondent of additional land, the great portion of which is owned by the city. On the record as it is presented to

us it is made to appear that the respondent is willing to make improvements for the purpose of removing much of the annoyance of which appellant complains, and by the same record it appears that there has been some delay on the part of the city which ought to be, and we assume is zealous, to have this situation improved, if possible. Under the statute authorizing action in the matter the respondent so long ago as May, 1913, submitted to the proper municipal authorities proposed plans for increasing and improving its terminal facilities and approaches and eliminating or reducing the annoyances now complained of by appellant, and the city has failed either to approve or disapprove of those plans. They may not be suitable. We have no knowledge of, and of course express no opinion upon, that subject. But if they are not practicable or proper, it would seem to be desirable that the city should indicate this with reasonable diligence and induce the submission of other plans which would be more satisfactory.

It thus appearing that the respondent is willing to co-operate for the betterment of the situation and that the delay has not been due to its default and unwillingness to act, we believe that it should receive fair consideration in the allowance of a reasonable time in which to make any alterations which may be required by the judgment and which specific alterations may be rendered unnecessary by prompt action on its part and on the part of the city looking to general improvements below Ninety-sixth street. We think that the injunctions of the judgment, outside of those relating to smoke as modified by us, should be stayed for six months, with the right to the respondent to apply for an extension of such stay if deemed necessary, and on which application if made the court will doubtless take into account and be influenced by a consideration of the question whether the respondent is proceeding as rapidly as it reasonably can to improve the situation of which appellant complains.

In accordance with the views thus expressed, the order of the Appellate Division should be modified, without costs, and the judgment of the Special Term as modified be affirmed, with a stay of enforcement of judgment for six months and a right to apply for further stay if the respondent be so advised.

WERNER, COLLIN, CUDDEBACK, MILLER, CARDOZO and SEABURY, JJ., concur.

Ordered accordingly.