AMOS W. BALL, Respondent, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Railroads — injunction — use of railroad tracks near private residence for interchange of freight cars at railroad terminal from one road to another — when such use does not constitute storage of cars — erroneous finding of fact that such use is unlawful and unreasonable — when injunction restraining such use should not be granted.

1. In the transportation of freight, railroads act in a public capacity and in the proper discharge of their duty to the public. The interchange of traffic is an essential part or act in the transportation. The public is entitled to an efficient and prompt service in the way of transportation of persons and freight and the railroad is shielded from responsibility for consequential and incidental damages from careful and non-negligent acts, which are necessary and unavoidable.

2. The freight terminal yard of a railroad is the natural and normal place for interchanging movements, but when, by reason of an increase of traffic or other just reason, the interchanging movements cannot be accomplished within the yard, they may be facilitated and aided by the use of the tracks connected with and adjacent to the yard. In such event a railroad is justified in any use of its tracks in connection with the yard which is reasonably necessary and incidental to that lawful situation.

3. The fact that a railroad company, at the junction of its main line and a branch road with another road, switched and classified cars of live stock upon the tracks of its branch road two or three nights in a week and frequently left them standing on the tracks for an hour or more, to feed and water live stock being shipped upon the cars, in pursuance of federal and state statutes, does not justify a finding that

3

the company stored or threatened or intended to store cars of live stock upon such tracks. The acts complained of were in the process of transporatation and did not constitute the storage of cars, and hence neither the findings nor the evidence support the mandate of an injunction enjoining the company from storing cars of live stock on such railroad tracks adjacent to the residence of the plaintiff.

4. Where the evidence and the findings show that the terminal yard of the railroad company is entirely inadequate to accommodate the needs of the company in the interchange of traffic at the junctions in question and that the use of the tracks of the branch line is necessary in the interchange of freight cars, a finding, or conclusion of fact, that such use of the tracks is wrongful, unlawful, unreasonable and excessive is erroneous and an injunction restraining the company from reclassifying and making up trains on these tracks is unsupported by the facts or by the law. (*Hearst* v. *N. Y. C. & H. R. R. R. Co.*, 215 N. Y. 268, 280, followed; *Richards* v. *Washington Terminal Co.*, 233 U. S. 546, distinguished.)

*Ball* v. *N. Y. C. R. R. Co.*, 183 App. Div. 910, reversed.

(Argued March 8, 1920; decided May 4, 1920.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered May 17, 1918, modifying and affirming as modified a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury. The appeal is from the affirmance only.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Robert E. Whalen* for appellant. The method of reclassifying and making up trains is just as proper as the method sanctioned by the Appellate Division of switching and breaking up incoming trains. The railroad lawfully used its own facilities. (*B. & A. R. R. Co.* v. *Vil. of Greenbush*, 52 N. Y. 510; *Matter of City of Buffalo*, 68 N. Y. 167; *Ferdon* v. *N. Y., O. & W. R. R. Co.*, 131 App. Div. 380; *L., etc., R. R. Co.* v. *Scomp*, 124 Ky. 330.) This is a plain case of *damnum absque injuria.* Operating under legislative sanction, and the rights of private

owners having been acquired, defendant is liable, if at all, only for negligence or nuisance. (*Ferdon* v. *N. Y., O. & W. R. R. Co.*, 131 App. Div. 380; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98; *U. S. L. & H. Co.* v. *N. Y. C. & H. R. R. R. Co.*, 158 App. Div. 875; 218 N. Y. 655; *Friedman* v. *N. Y. & H. R. R. Co.*, 89 App. Div. 38; 180 N. Y. 550; *Flinn* v. *N. Y. C. & H. R. R. R. Co.*, 142 N. Y. 11; *Conabeer* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 474; *Bennett* v. *L. I. R. R. Co.*, 181 N. Y. 431; *Hearst* v. *N. Y. C. & H. R. R. R. Co.*, 215 N. Y. 268; *B. & P. R. R. Co.* v. *Fifth Baptist Church*, 108 U. S. 317; *Richards* v. *Washington Terminal Co.*, 233 U. S. 546.) Tested by accepted standards, defendant's use of its railroad properties is reasonable, as matter of law. (*McCarty* v. *Natural Carbonic Gas Co.*, 189 N. Y. 40; *Booth* v. *R., W. & O. R. R. Co.*, 140 N. Y. 267; *Gordon* v. *Vil. of Silver Creek*, 127 App. Div. 888; 197 N. Y. 509.)

*John N. Carlisle* for respondent. The law is now well settled that a railroad company has no right to unreasonably use its property whereby damages are caused to others, or a nuisance is created. (*Hearst* v. *N. Y. C. & H. R. R. R. Co.*, 215 N. Y. 268; *Stephens* v. *N. Y., O. & W. R. R. Co.*, 196 N. Y. 552; *Garvey* v. *L. I. R. R. Co.*, 159 N. Y. 323; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10; *Booth* v. *R., W. & O. R. R. Co.*, 140 N. Y. 267; *McCarty* v. *Natural Carbonic Gas Co.*, 189 N. Y. 40; *Roman Catholic Church* v. *Penn. R. R. Co.*, 207 Fed. Rep. 897; *Baltimore & Potomac R. R. Co.* v. *Baptist Church*, 108 U. S. 317; *Richards* v. *Washington Term. Co.*, 233 U. S. 546.)

COLLIN, J. The action is for an injunctive judgment restraining the defendant from so operating its railroads as to cause a nuisance to the residence of the plaintiff in the village of Chatham, New York, and to recover damages for the injuries to it by reason of the past opera-

tion of the railroads. The Special Term granted the judgment and the Appellate Division affirmed it with a modification. The decision of the Appellate Division was not unanimous.

The cardinal facts are uncontested and are: At the commencement of the action the defendant was operating three lines of railroad entering, upon rights of way owned by the defendant, the village of Chatham, which has a population of about twenty-four hundred. Two of them, the one the Hudson and Chatham branch, extending from the city of Hudson to Chatham, the other the New York and Harlem railroad, extending from the city of New York to Chatham, ran northerly beside each other in the eastern part of the village to a railroad yard and terminus common to both within the village. The plaintiff's residence, consisting of a lot, dwelling house and barn, acquired in 1897, was contiguous to and west of the right of way of the Hudson and Chatham branch, which is the western of the two lines. Its northern line abutted on Hoffman avenue. The southern boundary of the railroad yard was about four hundred feet northerly from the residence. Westerly of and several hundred feet from the two lines and the residence of plaintiff ran the third line, the Boston and Albany railroad, extending from Albany to Boston. Its right of way was along the northern boundary of the terminal yard. It had tracks entering the yard. North of and adjacent to it was the railroad of the Rutland Railroad Company, extending from Chatham to Bennington, Vermont. The defendant and its predecessors in ownership had operated the three lines of railroad and yard through many years prior to 1897. Joint traffic facilities and arrangements existed and had for years existed between the defendant and the Rutland Company. In 1897 and soon after the plaintiff acquired his residence the defendant constructed, north of Hoffman avenue, a Y track from the Boston and Albany railroad to a point on the Hudson and Chatham branch near the residence of

plaintiff, and two cross overs between the branch and the New York and Harlem railroad within the block in which is the residence of plaintiff. Until then there were there no cross overs and cars or engines could not there go from one track to the other. Thereafter freight trains, some of which contained cars of live stock, from the Rutland and the Boston and Albany railroads were run over the Y on to the Hudson and Chatham line opposite plaintiff's residence and by means of the two tracks, cross overs and Y, used in connection with the terminal yard, broken up, classified and distributed into the yard or classified and assembled into trains for the branch or Harlem lines. Similarly freight trains arriving at Chatham on those lines were dissected and classified into trains destined for each other or for the Rutland or the Boston and Albany line. A switch engine and crew engaged in those operations were maintained. The terminal yard was entirely inadequate for such operations and the use of the Y track, cross overs and tracks adjacent to the premises of the plaintiff has, by increase in the traffic of the railroads,.been made necessary in the execution of the interchanging operations. The tracks and cross overs opposite plaintiff's residence have been and were daily used by defendant in those operations for periods varying from a few minutes to several hours at frequent intervals in the daytime and until midnight and later, necessitating daily a great number of train movements over them. In the movements there has not been negligence on the part of the defendant either in the construction of the tracks or in the selection or condition or management of the cars or locomotives. From them have come to and into plaintiff's residence a variety of disagreeable and disturbing sounds, and large quantities of smoke, soot, cinders, coal dust and gases. Malodors from cars of live stock are frequent. Plaintiff's property has been injured, its rental value lessened and his occupation and enjoyment of it seriously interfered with. The

sounds, smoke, cinders, soot, dust, gases and malodors are unavoidable in the interchanging operations.

The Special Term judgment restrained the defendant from (1) storing cars of live stock on its tracks adjacent to the plaintiff's premises, (2) switching and breaking up incoming trains on those tracks and (3) reclassifying and making up trains on those tracks, and stayed its effect.

The judgment presented to us, pursuant to the modification by the Appellate Division, enjoins the defendant from (a) storing cars of live stock on the railroad tracks adjacent to the residence property of the plaintiff, and (b) from reclassifying and making up trains on those tracks, and stays its operation. Neither in the findings nor in the evidence is there support for the first mandate. Findings of the Special Term are that the defendant " has frequently stored cars of live stock on the tracks adjacent to plaintiff's premises and left them standing there for upwards of an hour or more;" " Included in such interchanging movements on two or three nights in each week are cars containing live stock, usually calves, destined over the New York & Harlem Railroad for New York City * * *." The findings of the specific acts done by the defendant must control the findings in general terms. They, or the evidence, do not establish or reveal that the defendant stored, or threatened or intended to store, cars of live stock upon those tracks. They establish the facts that cars of live stock, particularly cars of calves, were, on two or three nights in each week, switched and classified on those tracks and frequently left standing there for upwards of an hour or more. Live stock were taken from cars upon them to be fed and watered pursuant to federal and state statutes, and reloaded for continued transportation. Those acts were in the process of transportation and did not constitute the storage of cars. The entire evidence is single to the conclusion that the storage of cars upon those tracks was incompatible with their uses. Upon them ran all the trains of the branch and

Harlem railroads having Chatham as an arriving or leaving point.

The plaintiff does not claim that the rights of way were not the property of the defendant, or the tracks were illegally or without authority constructed, or the defendant was in any sense a trespasser. His assertion is that the interchanging operations or movements at the place where they are made constituted an unreasonable and, therefore, an unlawful and wrongful use of the tracks involved in them; that the use was a public nuisance entitling the plaintiff to the right of action inasmuch as he sustained injuries of a personal and peculiar nature not suffered by the public in general. We have recently, through the opinion of Judge, now Chief Judge, HISCOCK in *Hearst* v. *New York Central & Hudson River R. R. Co.* (215 N. Y. 268, 280), declared principles applicable to the facts at bar: " So long as the acts performed by it (the railroad company) were not shown to be negligently done or to be outside the range of operations necessarily or reasonably incidental to the proper management of its road in the situation which lawfully existed respondent (the railroad company) was immune from attack by neighboring property owners like appellant, even though they were disturbed. But when it could be found that the acts complained of were injurious and were not necessarily or reasonably incidental to the operation of a railroad at the point in question but could be performed elsewhere, a right to relief arose in favor of the injured property owner." Under these principles and the facts there is for our consideration the question whether or not it could be found, as a matter of law, that the reclassifying and making up of trains by the defendant on its tracks adjacent to the plaintiff's premises was necessarily incidental to the operation of the railroads and could not be performed elsewhere. Concerning the question the findings of the Special Term are seemingly inconsistent. They decide that the terminal yard is entirely inadequate to accom-

modate the needs of the defendant in the interchange of traffic and this has necessitated the use of the tracks in question for a freight terminal and classification yard; that the use of the tracks in question is necessary in the execution of the interchanging movements. They decide also that the use is wrongful, unlawful, unreasonable and excessive. The findings in general terms or of conclusions of fact must yield, as we have stated, to the findings of the specific acts which the defendant has performed in the use, or, inasmuch as the affirmance is non-unanimous, to the lack of supporting evidence. Moreover, the defendant is entitled to the benefit of the findings most favorable to it.

The village of Chatham was the junction point of the four lines of railroad and the terminus of three of them. Each line was legally authorized to so unite itself with each of the others as to permit the interchange of traffic, and the corporations whose roads were joined were obligated to receive from each other and forward to their destination all freight destined for points on their respective roads. (Laws of 1892, chapter 676, section 12; Railroad Law [Cons. Laws, chapter 49], section 22; *Jennings* v. *Delaware, Lackawanna & W. R. R. Co.*, 103 App. Div. 164; affd., 190 N. Y. 544.) The railroad termini and the freight terminal yard of the defendant were lawfully fixed in their existing locations and were arranged and in use at and through many years prior to the time the plaintiff purchased his residence lot. In the transportation of freight the railroads act in a public capacity and in the proper discharge of their duty to the public. The interchange of traffic is an essential part or act in the transportation. The public is entitled to an efficient and prompt service in the way of transportation of persons and freight and the railroad is shielded from responsibility for consequential and incidental damages from careful and non-negligent acts, which are necessary and unavoidable, to bring about such service. (*Beseman*

v. *Pennsylvania R. R. Co.,* 50 N. J. L. 235; affd., 52 N. J. L. 221; *Roman Catholic Church, etc.,* v. *Pennsylvania R. R. Co.,* 207 Fed. Rep. 897; *Fink* v. *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.,* 181 Ind. 539; *Matthews* v. *New York Central & Hudson River R. R. Co.,* 231 Mass. 10.) The freight terminal yard is the natural and normal place for interchanging movements. When by reason of an increase of traffic or other just reason the interchanging movements cannot be accomplished within the yard they may be facilitated and aided by the use of the tracks connected with and adjacent to the yard. The defendant was justified in any use of its tracks in connection with the yard which was reasonably necessary and incidental to that lawful situation. (*Hearst* v. *New York Central & Hudson R. R. R. Co.,* 215 N. Y. 268; *U. S. Leasing & Holding Co.* v. *New York Central & Hudson R. R. R. Co.,* 158 App. Div. 875; affd., 218 N. Y. 655; *Bennett* v. *Long Island R. R. Co.,* 181 N. Y. 431; *Friedman* v. *New York & Harlem R. R. Co.,* 89 App. Div. 38; affd., 180 N. Y. 550; *Thomason* v. *Seaboard Air Line Ry. Co.,* 142 N. C. 318; *Georgia R. R. & Banking Co.* v. *Maddox,* 116 Ga. 64.) The facts, as presented by the record, did not establish that the defendant was not justified, in virtue of such rule, in its use, as found, of the tracks adjacent to the property of the plaintiff. True it is that a railroad company may not use its tracks connected with and adjacent to its railroad yard for all purposes under all conditions. Certain of those purposes concern the rights and conduct of the company in its private capacity and not in the acts of transportation or concomitant acts, and may be fulfilled in the yard or some other location where the annoyance from them would not constitute either a public or private nuisance. (*Hearst* v. *New York Central & Hudson R. R. R. Co.,* 215 N. Y. 268; *Southern Railway Co.* v. *Fisher,* 140 Tenn. 428.) The location involved in the *Hearst* case was in a residential portion of the city of New York. There the railroad company habitually

stored, and for long periods, scores of cars loaded with live stock emitting foul odors which penetrated the plaintiff's residence; also it dissected trains for the purpose of selecting cars to be sent to other yards. The uses which the *Hearst* case inhibited did not exist in the instant case. The use in this case to be considered by us was sanctioned by the *Hearst* case.

A few words will suffice to distinguish the case of *Richards* v. *Washington Terminal Co.* (233 U. S. 546) from that at the bar. In the *Richards* case the right of way of the defendant with double tracks extended through a tunnel of undesignated though of considerable length. About thirty trains each day ran through the tunnel. A fanning system installed in the tunnel caused the gases and smoke emitted from the engines while in the tunnel to be forced out of the south portal and upon and into the residence of the plaintiff near to it. The plaintiff complained of vibrations caused by, and of smoke, cinders and gases emitted from, the passing trains and from the tunnel. The court decided that in respect to the injuries caused the property of the plaintiff by the gases and smoke gathered in and forced from the tunnel upon the property there was a right of recovery; damages from other injuries were *damnum absque injuria.* While the principles declared are those we are applying, the decision itself is not relevant.

We return to the finding of the trial court that the switching and classifying of cars on the Y, cross overs and main tracks adjacent to plaintiff's premises is an unreasonable use of the tracks. It may be that the finding, in connection with those relating to the necessity of the interchanging movements, expresses the conclusion of the court that those movements, while necessary to transportation, might reasonably and without material detriment to the welfare of the public, or injury to any property owner, be carried on in a place other than that of their present performance. There is not in the record

presented to us any evidence in support of such a conclusion. The issue involved in it was not litigated. This is not a case in which a railroad line has to do only with its own needs or convenience, and the switching and transfer of cars and freight in the dissecting and making-up of its trains may be a matter of indifference to other carriers or the public. The acts of the defendant complained of are the effects of the existence of the termini and junctions of importance. A court cannot know, without evidence, whether or not the uniting of the lines of railroad so as to permit the interchange of traffic, and the delivering to and receiving by each company of all freight destined for points on its road, as contemplated by the statute, can be reasonably accomplished otherwise than as and where they are. In the absence of evidence concerning such question it may well be doubted whether the findings of necessity and unavoidableness are sustained. The immunity which we have attributed to the defendant springs from necessity in the fulfillment of its public functions. The general welfare and prosperity demand its existence. Private convenience and interest must yield to it. Wherever the reasonable necessity does not exist it does not exist. The necessity in the instant case must be established by defendant through proof. The defendant must fulfill its duties to the public. To avoid inflicting damage to the plaintiff it cannot inflict a similar damage to another. It is not bound to abandon its right of way or tracks; it is not bound to acquire the property of the plaintiff because it causes damage to him; it is not bound to use unreasonable and impracticable means or methods. If in the use of the right of way and tracks, taking into consideration the conditions, environments and limitations, the defendant is compelled to accomplish the interchange of traffic in the locality where it is now accomplished, and is unable to adapt and utilize land within its yard or owned by it, or within an extension of the land, or to employ analogous means or methods, for effecting the interchange

of traffic without damage to the plaintiff, the damage resulting from non-negligent acts is without injury — *damnum absque injuria* — because the acts causing it are lawful. If, on the other hand, the defendant in the use of its tracks can, taking into consideration the conditions, environment and limitations, accomplish the interchange of traffic in another locality, or can adapt and utilize land within its yard or owned by it, or an extension of the land, or employ analogous means or methods, for effecting the interchange of traffic without damage to the plaintiff, the acts are unlawful and the plaintiff is entitled to relief.

The judgment should be reversed and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., CHASE, CARDOZO, POUND, CRANE and ANDREWS, JJ., concur.

Judgments reversed, etc.